UNITED STATES of America

v.

A FEE SIMPLE PARCEL OF REAL PROPERTY SITUATED IN THE CITY OF BAL HARBOUR, STATE OF FLORIDA, Census Tract 38, Map Reference 52–42–26, Unit 6A, 9801 Collins Avenue, Project Balmoral, Dade County, Florida 23154, Folio 12–2226–23–002

Civ. A. No. 86–0161.

United States District Court, E.D. Louisiana.

Jan. 12, 1987.

Gregory C. Weiss, Asst. U.S. Atty., New Orleans, La., for plaintiff.

Ira N. Loewy, Donald I. Bierman, Miami, Fla., for defendant Robert Seraydar.

Henry H. Bolz, III, Miami, Fla., for defendant Pan American Bank, N.A.

ROBERT F. COLLINS, District Judge.

The Court, sitting without a jury, tried this case on October 24, 1986 and took the matter under advisement. The following Findings of Fact and Conclusions of Law are now made.

## FINDINGS OF FACT

Plaintiff, United States of America, seeks forfeiture of the defendant real property pursuant to 21 U.S.C. § 881(a)(6). Claimant, Robert Seraydar, contests the seizure and asserts ownership of the property. Claimant, Pan American Bank, N.A., (the Bank) holder of a mortgage on the property, claims the value of that lien, plus fees and costs.

In October 1985, Randy Fink was convicted of conspiracy to import and distribute 52,210 pounds of marijuana. For a decade prior to his conviction, Fink was principally engaged in the business of smuggling drugs.

In early 1984, Fink hired a real estate broker to help him find a condominium for his mother. After a suitable apartment was located in Bal Harbour, Florida, Fink sought the assistance of an associate, Anthony Varca, to help him find a "nominee" who would be the public record owner.

Fink had known Varca for approximately three years prior to his arrest. Varca owned a shipping company in Fort Lauderdale, Florida and used the corporation to provide Fink with vessels to transport marijuana from Columbia. Fink testified by deposition that he was responsible for coordinating the loading and unloading of the vessels. In the course of their business relationship, Fink came to trust Varca and eventually gave him the power of attorney over a bank account at the Bank of Credit and Commerce International (BCCI) located in the Cayman Islands. All of the money

contained therein were the proceeds of Fink's drug smuggling operations.

Varca advised Fink that he would arrange to obtain a nominee owner for the defendant for the sum of $25,000.00. In order to protect Fink's interest in the defendant, Varca agreed to arrange a lien against the defendant and to work an under-the-table deal with the nominee to return the defendant to Fink. At some point, Varca advised Fink that the claimant, Robert Seraydar, would be the "front man" for the defendant. Having obtained power of attorney over Fink's BCCI account, Varca ordered the BCCI to make a check payable in the amount of the purchase price of the defendant.

Claimant, Robert Seraydar, is a 74-year-old retired photoengraver. He gained experience with oceangoing tugboats during World War II, when he worked for the Army Transport Service. In the years since the war, he has on occasion worked on the rehabilitation of other vessels.

Mr. Seraydar was introduced to Varca by a mutual friend by the name of Warren Kerns. Varca owned Romar Transports, Ltd., a shipping and ship supply company located in Fort Lauderdale, Florida, and Varca and Kerns had known each other for approximately 20 years. Seraydar testified that in the late spring of 1984, Varca approached him with a business deal to move an oil tanker which had been tied up in a legal battle in the Dominican Republic. The plan was for Seraydar to renovate an oceangoing tug known as the OCEAN CROWN, captain it to the Dominican Republic, from where he was to tow the tanker to the Cayman Islands.

Seraydar claims that he was promised a minimum fee of $50,000.00 to embark on the voyage, and $100,000.00 if he successfully towed the tanker to the Cayman Islands. All expenses incurred in the venture were also included. The OCEAN CROWN left Tampa, Florida in September, 1984, under Seraydar's command and headed for the Dominican Republic. The vessel, however, ran into Hurricane Isadore and had to be rescued by the Coast Guard. Seraydar claims that it was at this point that Varca offered him the defendant as security for his $50,000.00 fee. He testified that he agreed to accept title to the defendant because it was the only way that he could ensure that he was paid for his services.

Seraydar attended the closing on the defendant property and received a deed naming him as the record owner in fee simple on November 2, 1984. The sellers of the property were paid by Varca from funds that were used from Randy Fink's bank account. After Seraydar obtained title to the defendant, he had an argument with Varca concerning the seaworthiness of the OCEAN CROWN. Seraydar considered the ship to be unsafe and refused to resail to the Dominican Republic unless Varca repaired the ship. Varca refused, and Serayder backed out of the deal.

From November, 1984 to about May, 1986, Randy Fink's mother resided in the defendant. For the entire time, Seraydar never collected any rent or moneys from Fink's mother during her tenure there. Seraydar testified that Mrs. Fink told him that her son, Randy Fink, had bought the apartment for her. At no time did Seraydar reside in the defendant or rent it.

The Court finds it incredible to believe that Mr. Seraydar had no inkling of the drug deals of Tony Varca and Randy Fink. Mr. Seraydar is a worldly and knowledgeable man who has been in the shipping business for many years. While he may have contracted to go on a vessel recapture venture for Tony Varca, the Court does not believe that he was unaware of an illegal money source if Tony Varca could deed him property valued in excess of $200,000.00, but could not pay him $50,000.00 in cash. Additionally, it is incredible that Mr. Seraydar did not seek to evict or collect rent from Mrs. Fink when she established residence in the defendant. If he was as "innocent" as he claims, he would have taken some action to find out who Randy Fink was or to evict his mother. Of some note is the fact that Mr. Seraydar executed an Affidavit Concerning Business Purpose in connection with the mortgage from Pan

American Bank, wherein he represented that he will not occupy the defendant for more than fourteen days in any year, and that the property was to be used only for investment purposes. The fact that he never made a penny from the defendant is significant in the Court's determination that Mr. Seraydar was aware of the drug smuggling connections of Tony Varca and Randy Fink.

Beginning in approximately March of 1985, Seraydar began to pay condominium fees and real estate taxes associated with the defendant. On May 30, 1985, he obtained a $38,000.00 loan from Pan American Bank, N.A. using the defendant as collateral. The Bank has filed a claim in this action to recover that loan.

The Government has asserted that the Bank has no standing to contest this forfeiture because it was not innocent. The Government argues that there were certain irregularities about the manner in which Mr. Seraydar obtained a loan. The Court, however, is not persuaded by these contentions.

At all times material to this action, the Bank was a national banking association with its principal place of business in Dade County, Florida. Mr. Seraydar has had a long standing relationship with the Bank and its predecessors in interest for approximately 18 years. Both Mr. Seraydar and his family were well known to Mr. Russell Moneyhun, the loan officer. Mr. Moneyhun has testified by deposition that there were never any legal problems, any suspicious transactions, or any other unusual events in Robert Seraydar's banking history.

Mr. Seraydar applied for a loan on the defendant in May, 1985, and the Bank caused the title on the defendant to be examined and searched to assure that Mr. Seraydar was the true owner. When the title search and abstract review indicated that Mr. Seraydar owned the defendant in fee simple and that its appraised value was in excess of $200,000.00, the Bank approved the loan without requiring Mr. Seraydar to prepare and file a financial statement. Additionally, in the two years that

preceded Mr. Seraydar's mortgage application, he had deposited approximately $60,-000.00 in 1983 and $90,000.00 in 1984 from the sale of stock.

The Bank followed the same procedure that it instituted when a $7,000.00 loan was made to Seraydar in 1984. At that time, a personal financial statement was also not requested from Mr. Seraydar, because the loan was fully secured by collateral. That loan was paid back in the ordinary course of business without any delay or problems. The Bank duly and properly caused the resulting Promissory Note and Mortgage on the defendant to be recorded in Dade County, Florida, thereby establishing the legal interest of the Bank in the defendant.

Based on the preceding facts, the Court finds that Pan American had no actual or constructive knowledge or any involvement in any illegal activities of Randy Fink and Anthony Varca. The Bank's failure to obtain a personal financial statement from Mr. Seraydar in May, 1985 is insufficient to establish any knowledge of the illegal activity giving rise to the "tainted money" used to purchase the defendant.

Insofar as these Findings of Fact also constitute Conclusions of Law, they are specifically adopted as both Findings of Fact and Conclusions of Law.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355. Venue in this action lies properly in the Eastern District of Louisiana.

*Probable Cause*

The forfeiture of the defendant property is sought by the Government pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970 § 511(a)(6) as amended, 21 U.S.C. § 881(a)(6). This provides that:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all pro-

ceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6).

This is an *in rem* proceeding brought against the defendant pursuant to the fiction that the property itself is guilty of facilitating crime. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974).

■ There is no dispute concerning the applicability of 21 U.S.C. § 881(a)(6) to real property.[1] *United States v. Premises Known as 8584 Old Brownsville Road*, 736 F.2d 1129 (6th Cir.1984). In a forfeiture proceeding, the plaintiff has the initial burden of demonstrating the existence of probable cause to seize the defendant property and initiate the forfeiture action. *United States v. $53,661.50 in U.S. Currency*, 613 F.Supp. 180, 184 (S.D.Fla.1985). Probable cause is a question of law, and circumstantial evidence is sufficient to satisfy the government's initial burden. *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars, etc.*, 661 F.2d 319 (5th Cir.1981). If unrebutted, a showing of probable cause alone will support forfeiture. *United States v. Little Al*, 712 F.2d 133 (5th Cir.1983). The test for determining probable cause for forfeiture is similar to that for arrests, searches and seizures: the government must show a reasonable ground for belief that there was an unlawful exchange of controlled substances, and that there is a substantial connection between that exchange and the property so that the drug proceeds are traceable to the property. It is a reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion. *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980).

■ As discussed *supra*, Randy Fink is now incarcerated for his role in a drug smuggling operation, and Tony Varca is presently a fugitive from the law enforcement authorities. The entire sum used to purchase the defendant also came directly out of Mr. Fink's bank account. As part of his plea agreement with the government, Fink has waived any claim or right that he may possess in the defendant. The Court therefore concludes that the Government does have probable cause to seize the defendant property.

*Standing*

■ Once the Court determines that the plaintiff has probable cause to seize the defendant property, the burden of proof shifts to the claimants to prove that they have proper standing to contest the forfeiture. *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370 (5th Cir.1986); *United States v. Fleming*, 677 F.2d 602 (7th Cir.1982). To contest a forfeiture action, an individual must first demonstrate an interest in the seized property. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960) in United States Currency*, 661 F.2d 319, 326 (5th Cir.1981).

■ 21 U.S.C. § 881(a)(6) provides that the interest of an innocent owner is not subject to forfeiture.[2] The term "owner" is broadly interpreted to include any person with a recognizable legal or equitable inter-

---

1. The Court notes that subsection (a)(7), newly enacted in 1984, specifically applies to real property. However, that subsection is applicable only where the real estate has been used in the direct and actual facilitation of the crime. Subsection (a)(6) applies to property, real or personal, which was purchased with drug monies or exchanged for drugs and is therefore more appropriate for the instant case.

2. "... No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

est in the property seized. *U.S. v. One Piece of Real Estate, etc.*, 571 F.Supp. 723, 725 (W.D.Tex.1983). The remedy of an innocent owner is to file a claim in the forfeiture proceeding and establish (1) the existence of his ownership interest and (2) his innocence. *Id.* If this showing is made, the claimant's interest survives forfeiture and may be returned to him in a manner provided by the Court.

 An ownership interest in property may be evidenced in a number of ways including actual possession, control, title and financial stake. *United States v. One 1945 Douglas C54 (DC-4) Aircraft*, 647 F.2d 864 (8th Cir.1981). However, documents of title are not the *sine qua non* of ownership. *United States v. DKG Appaloosas, Inc.*, 630 F.Supp. 1540, 1568 (E.D. Tex.1986). Possession of bare legal title to the seized property by one who does not control and exercise dominion over the property, or have a financial stake in the property may be insufficient to establish ownership. *United States v. One 1978 Piper Navajo PA–31 Aircraft*, 748 F.2d 316, 319 (5th Cir.1984). However, the term owner may be broadly construed to encompass any person with a recognizable legal or equitable interest in the property seized. *United States v. $47,875.00 in United States Currency*, 746 F.2d 291 (5th Cir. 1984).

 The Government vigorously argues that claimants Seraydar and the Bank do not have standing in the instant case. It is the Court's conclusion, however, that Mr. Seraydar exercised sufficient control to achieve standing by possessing title in fee simple, paying taxes and condominium fees, and by taking out a mortgage on the defendant. The Bank also has standing to file a claim in this forfeiture action by virtue of its lien on the defendant property. *U.S. v. One Piece of Real Estate, etc.*, 571 F.Supp. 723 (W.D.Tex.1983).

*Innocent Owner*

 Claimants must next prove that they did not have any knowledge that the defendant property was purchased with the proceeds of drug transactions. *United States v. $47,875 in U.S. Currency*, 746 F.2d 291 (5th Cir.1984).

 As discussed *supra*, the Court does not find any credibility in Mr. Seraydar's testimony that he did not know of Tony Varca and Randy Fink's drug transactions. Mr. Seraydar is therefore not an innocent owner within the contemplation of 21 U.S.C. § 881(a)(6), and does not have a valid claim in the defendant property.

 The Bank, however, has established by a preponderance of the evidence that it was not aware of the illegal source of the funds that were used to purchase the defendant. The procedures which it utilized in approving the mortgage was consistent with past practice.

 The Bank, however, asks for interest from the date of seizure. A lienholder is not entitled to any post-seizure interest, attorneys fees, or other charges that may be permitted under a mortgage note. *United States v. One Piece of Real Estate, etc.*, 571 F.Supp. at 725. The Bank is therefore entitled to only the unpaid principal of $38,000.00.

*The Counterclaims*

Mr. Seraydar has additionally asserted a counterclaim against the United States for $25,000.00 that he has paid in condominium maintenance fees, real estate taxes, court costs, and attorneys fees.

 The taxation of costs in civil actions is an equitable matter at the discretion of the trial court. *United States v. E.K.G. Appaloosas*, 630 F.Supp. 1540 (E.D. Tex.1986). 28 U.S.C. § 2465,[3] which is the

---

**3.** The full text of 28 U.S.C. § 2465 provides as follows:

"Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the Court shall cause a proper certificate thereof to be entered *and the claimant shall not, in such case, be entitled to costs,* nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution."
(Emphasis added.)

primary statute that governs the return of seized property to a successful claimant, specifically does not allow for the recovery of costs expended on the maintenance of seized property. Here, Seraydar has not prevailed on his claim, and there is even less basis for the Court to allow the recovery of maintenance fees.

■ Additionally, Seraydar testified that he took out the loan from the Bank to pay for maintenance expenses on the defendant. By holding that the Bank is an innocent lienholder, Seraydar is absolved from repaying the principal on that loan. Mr. Seraydar therefore has no viable claim in equity for any fees associated with the defendant. The counterclaim by Seraydar should therefore be dismissed.

In addition to the primary forfeiture petition, the government has also filed a counterclaim against Seraydar seeking indemnification for $38,000.00 plus interest and costs in the event that the Court rule in favor of the Bank.

■ Claimant Seraydar argues that there is no statutory authorization for the government's counterclaim, because this is an *in rem* action brought against seized property pursuant to the fiction that the property itself is guilty of facilitating a crime. *Colero-Toledo v. Pearson Yacht Leasing Company*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). However, while it may be true that the statute does not provide for *in personam* jurisdiction over a claimant, Mr. Seraydar has effectively submitted himself to the jurisdiction of this Court by making his counterclaim.

The government seeks to rely upon the "relation-back" doctrine as a basis for its counterclaim. It argues that when a federal statute provides for the forfeiture of specific property used in or connected with the commission of a certain act upon the commission of that act, the forfeiture takes effect immediately upon the commission of the act. This would mean that the right to the property vests in the United States at the time that the offense was committed. Although judicial condemnation does not occur until later, the judicial condemnation is said to "relate back" to the time the offense was committed. *See United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890).

However, the relation-back doctrine cannot operate in this action to produce the suggested results. The language of 21 U.S.C. § 881(a) is that of a permissive forfeiture statute when it provides that "[t]he following *shall be subject* to forfeiture to the United States ..." (emphasis added). *United States v. $13,000 in United States Currency*, 733 F.2d 581 (8th Cir.1984). Controlling precedent in this Circuit has held that the doctrine of relation back, as announced in *Stowell*, does not apply where the statute provides only for a possibility of subsequent forfeiture. *United States v. Currency Totaling $48,318.08*, 609 F.2d 210, 213, *reh. denied*, 612 F.2d 579 (5th Cir.1980).

■ *United States v. Currency Totaling $48,318.08* involved the forfeiture of money under the Currency and Transactions Reporting Act, §§ 231, 232, 31 U.S.C. §§ 1101, 1102. The Court held that this statute is permissive because it provided that currency transported in violation of the § 1101 reporting requirement is "subject to seizure and forfeiture to the United States." 31 U.S.C. § 1102(a). This is the same language that is contained in 21 U.S.C. § 881(a)(6). In light of this authority, the Court is of the opinion that the relation-back doctrine does not apply and that the United States cannot invoke it to seek indemnification from Mr. Seraydar for the $38,000.00 mortgage.

Additionally, 21 U.S.C. § 881(e) explicitly states that:

"[t]he proceeds from any sale under paragraph (2) and any monies forfeited under this subchapter shall be used to pay all proper expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising and court costs."

Therefore, any expenses incurred by the government in initiating a forfeiture action must be borne by the sale of the property.

Equity, however, dictates that Mr. Seraydar reimburse the government for at least a part of the mortgage money. Since the Court has held that the Bank is an innocent lienholder, the $38,000.00 mortgage that it holds on the defendant must be repaid by the government out of the proceeds of the sale of the defendant. Mr. Seraydar has submitted $20,973.82 [4] in expenses incurred in the maintenance of the defendant. After the government repays the $38,000.00 mortgage, Mr. Seraydar will have made a profit of $17,026.18 at the government's expense.

 This result directly contravenes the purpose of the forfeiture laws. The statute is designed to serve broad nonpunitive purposes by removing the incentive to engage in the drug trade and by denying drug dealers the proceeds of ill-gotten gains. It strips the drug trade of its instrumentalities, including money, and finances government programs designed to eliminate drug trafficking. 95th Cong., 2nd Sess., 124 Cong. R. 23055–23057; 7 U.S.Code Cong. R. & Adm.News, 9496, 9523 (1978). If the government had to pay the entire amount of the mortgage principal to the Bank, Mr. Seraydar would directly benefit from his association with the drug trade. This cannot be allowed to happen. The counterclaim against Mr. Seraydar is therefore DENIED in part and GRANTED in part.

In conclusion, Mr. Seraydar is not an innocent owner and therefore does not have a valid claim to the defendant proper-

ty. The counterclaim by Mr. Seraydar for reimbursement of condominium maintenance fees is DENIED, because he has not prevailed on his claim. Based on equitable reasons, the counterclaim by the government is GRANTED in part.

*The Lis Pendens*

On August 22, 1986, the government recorded a *lis pendens* against claimant Seraydar's personal residence located at 3860 N.E. 170 Street, North Miami Beach, Florida 33160. After trial, Mr. Seraydar moved the Court to dissolve the *lis pendens*. The Court took the matter under submission pending resolution of the case. For the following reasons, that motion is GRANTED.

The government claims that it filed the notice of claim in order to protect Mr. Seraydar's property as collateral for the $38,-000.00 loan from the Bank. This would be in the event that the government succeeds on its counterclaim.

 A *lis pendens* is a provisional remedy that notifies prospective purchasers and encumbrancers that any interest acquired by them in the subject property must succumb to the decree of the Court. *Beefy King International, Inc., et al. v. Veigle*, 464 F.2d 1102 (5th Cir.1972); *Allstate Finance Corp. v. Zimmerman*, 272 F.2d 323 (5th Cir.1959). Although a *lis pendens* ostensibly serves a notice function, its effect is to burden the alienability of the affected property pending the outcome of the suit. The jurisprudence has therefore limited the use of this provisional remedy to those cases where the required relief specifically affects the property.

---

**4.** By the terms of the mortgage, the $38,000.00 principal would become due at the end of the term of the note on May 30, 1986. The interest payments (12.167%) were to be paid in four quarterly installments. There was a renewal option for two additional years.

Mr. Seraydar has submitted cancelled check #797, dated September 3, 1985, for $1,127.33; check #803, dated November 30, 1985, for $1,116.78; a bank debit check dated March 20, 1986 for $1,092.50; and a bill from Pan American Bank to Mr. Seraydar, dated May 30, 1986, for $1,039.72 with the words "pay recd 5/28/86" handwritten on it. The Court accepts

all but the bill as evidence of payment on the mortgage interest by Mr. Seraydar for a total of $3,336.61. Claimant has also submitted cancelled checks totalling $6,648.18 to the Balmoral Condominium Association for maintenance fees; checks totalling $10,989.03 to the Dade County Tax Collector for property taxes on the defendant; and checks totalling $1,207.00 to David Lococo, Esq. for "professional services." The Court accepts all but those bills termed "professional services" as bona fide expenses incurred by Mr. Seraydar in his maintenance of the property. Thus, allowable expenses total $20,973.82.

*Beefy King International.* Mr. Seraydar's homestead has never been the subject of this forfeiture action. The Court is accordingly reluctant to allow the *lis pendens* to continue to burden the alienability of the property simply because Mr. Seraydar exercised his rights and interposed a claim to the defendant.

 The government argues that the holding in *Beefy King International* presumes that the owner of the property on which the *lis pendens* was placed is solvent, and point to testimony by Mr. Seraydar at trial that he has been cannibalizing his investments and savings in order to live. Without more evidence, however, the Court cannot reach the conclusion that Mr. Seraydar is on the verge of bankruptcy. Testimony shows that Mr. Seraydar's debts with the Bank were always timely paid and that he managed the defendant in a responsible manner. Mr. Seraydar is a 74–year-old man who has lived at the same address for over ten years. This Court will not encumber his homestead without more than a mere suspicion of insolvency. The *lis pendens* on his property, located at 3860 N.E. 170 Street, North Miami Beach, Florida 33160, must therefore be released.

## JUDGMENT

In accordance with the Opinion rendered by the Court on January 9, 1987,

IT IS ORDERED, ADJUDGED AND DECREED that there be JUDGMENT in favor of plaintiff, United States of America, and against the defendant, A Fee Simple Parcel of Real Property Situated in the City of Bal Harbour, State of Florida, Census Tract 38, Map Reference 52–42–26, Unit 6A, 9801 Collins Avenue, Project Balmoral, Dade County, Florida 23154, Folio 12–2226–23–002;

That there be JUDGMENT in favor of plaintiff, United States of America, and against claimant, Robert Seraydar. The claims of Mr. Seraydar are DISMISSED, with prejudice;

. That there be JUDGMENT in favor of claimant, Pan American Bank, N.A., and against plaintiff, United States of America, in the amount of THIRTY–EIGHT THOUSAND AND NO/100 DOLLARS ($38,000.00) with judicial interest from date of entry of JUDGMENT;

That there be JUDGMENT in favor of plaintiff, United States of America, and against claimant, Robert Seraydar, in the amount of SEVENTEEN THOUSAND TWENTY–SIX DOLLARS AND 18/100 ($17,026.18), with interest from the date of judicial demand;

That the *lis pendens* placed on the property owned by Robert Seraydar that is located at 3860 N.E. 170 Street, North Miami Beach, Florida 33160, be RELEASED;

That the counterclaim by claimant, Robert Seraydar, against plaintiff, United States of America, be DISMISSED, with prejudice;

That all parties shall bear their costs in maintaining their claims.