UNITED STATES of America,
Plaintiff–Appellee,

v.

ONE SINGLE FAMILY RESIDENCE LOCATED AT 6960 MIRAFLORES AVENUE, etc., Defendant,

Republic National Bank of Miami,
Claimant–Appellant,

Thule Holding Corp., Claimant.

No. 90–5295.

United States Court of Appeals,
Eleventh Circuit.

July 27, 1993.

in each case. *Presnell,* 959 F.2d at 1530 n. 4.

Stanley A. Beiley, Robert M. Sondak, Miami, FL, for claimant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, FL, Alan Dagen, Asst. U.S. Atty., Ft. Lauderdale, FL, Anne M. Hayes, Asst. U.S. Atty., Miami, FL, Linda C. Hertz, Robert Rosenberg, Asst. U.S. Attys., Ft. Lauderdale, FL, for plaintiff-appellee.

ON REMAND FROM THE SUPREME
COURT OF THE UNITED STATES

Before KRAVITCH and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

In this action by the government for forfeiture of residential premises pursuant to 21 U.S.C. § 881(a)(7), the district court denied the innocent ownership claim of the mortgagee Republic National Bank. We conclude that an incorrect standard was applied to measure Republic's conduct and that the court relied on clearly erroneous findings of fact. We reverse.

### Statement of the Issue

Whether the district court correctly applied the actual knowledge standard of the forfeiture exception in 21 U.S.C. § 881(a)(7) in denying Republic's innocent ownership claim.

### Procedural History

The government brought this action pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7) to forfeit a single family home in Coral Gables, Florida. Republic National Bank of Miami ("Republic") filed its claim and answer in which it asserted the defense that it was the innocent owner of a first mortgage encumbering the property. The district court denied Republic's claim and ordered the property and Republic's mortgage lien forfeited. *United States v. One Single Family Residence,* 731 F.Supp. 1563 (S.D.Fla.1990). Republic timely filed its notice of appeal.

The government filed a motion to dismiss the appeal for lack of jurisdiction over the *res.* This Court granted the motion. *United States v. One Single Family Residence Located at 6960 Miraflores Avenue,* 932 F.2d 1433 (11th Cir.1991). Subsequently, the Supreme Court reversed this Court's order of dismissal and remanded the case to this Court for consideration of the issues raised on appeal. *Republic National Bank of Miami v. United States,* —— U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992).

## FACTUAL BACKGROUND

Republic's president, Fred de la Mata, was approached by Ramon Puentes to make a loan secured by a mortgage on a residence. Puentes was well-known to de la Mata as an excellent bank customer through a longstanding and profitable business relationship with Republic. Loans of over a million dollars had been made for Puentes' automobile business and for his real estate transactions over an 18–year period. Puentes stated that he and a partner owned a property in Coral Gables, Florida, which was on the market for sale. The vacant residence was a luxury waterfront property, located at 6960 Miraflores Avenue.

Title to the property was in the name of Thule Holding Corporation. This property was Thule's principal asset and was appraised at $1,200,000. Thule, a Panamanian shell corporation, had not previously been a customer of Republic. The loan Puentes sought for Thule was a "bridge" loan until the property was sold.

The undisclosed true owner of the property was Indalesio Iglesias, who had purchased it with the proceeds of narcotics trafficking. The property in question was purchased in 1983 and the construction of the house was completed in 1984. Four years later, Republic, without knowing of Iglesias' involvement or source of funds, made a loan of $800,000 to the record owner, Thule Corporation, secured by a first mortgage on the property.

When Puentes arrived in the president's office to request the loan, de la Mata and his son Fred Jr. were discussing the son's plans for a honeymoon trip. Puentes offered to give as his wedding gift to Fred Jr. airplane tickets to St. Thomas and St. Maarten and to pay for hotel accommodations. At least three other bank customers with a personal relationship to de la Mata each gave wedding presents with a value of approximately $1,000. Puentes' gift of approximately $3,000 was paid for by check from Thule, with part of the loan proceeds. At the same time, but unknown to the bank or de la Mata, airplane tickets were purchased by Thule for Iglesias for Geneva, Switzerland.

As part of the approval procedure, de la Mata went to the site to inspect the property with Fernando Martinez, the senior vice president in charge of real estate loans, and Felix Garcia, a lending officer. Martinez examined an appraisal and the real estate listing before his inspection of the property. De la Mata did not have individual authority to make the loan. De la Mata proceeded quickly since Thule had obtained loan approval from another lender.

Approval had been given for a $750,000 loan from Westfield Financial Corp., negotiated by a mortgage broker, with terms of 16% or 3% over prime. Westfield had not asked for Thule's tax returns, financial statements, appraisals or a personal guarantee.

The Westfield terms were rejected by Thule's attorney, and the loan did not close.

After inspecting the property, and considering the favorable ratio of an $800,000 loan on the $1.2 million property, de la Mata obtained approval from the loan committee during a break from a special meeting at the Sofitel Hotel. Later, at a formal meeting, the committee ratified its approval. De la Mata placed major reliance on Puentes as a guarantor, although Thule's 100% shareholder, Munoz, also guaranteed the loan. The loan documentation contained an unaudited financial statement that listed Munoz as the owner of Thule's shares. Martinez believed that since Puentes was going to sign as a guarantor and he had made the loan request, that there was an implicit representation that Puentes was part of Thule Holding Corporation.

Before the loan was closed, Republic had the name of the borrower, what constituted the collateral, amount of the loan applied for, repayment terms, names of the guarantors, a copy of the corporate charter of Thule, encumbrancing certificate, survey, official registry in Panama, certificate of good standing, resolution authorizing the loan, a title search, mortgage title insurance, proposed mortgage, conditional assignment of leases, guarantees of Munoz and Puentes, financing statement, disclosure statement and closing statement. The "offering ticket", a presentation of the loan to the loan committee, contained the information that "[t]he customer is in the process of selling this property. The request will be only temporary until the sale of the same."

A few days after the closing, Thule cut two cashier's checks to Union Bank of Switzerland, each in the amount of $350,000, signed by a Republic vice president, who was de la Mata's personal assistant.

## ANALYSIS

We review the application of the "innocent owner" defense to a civil forfeiture case under 21 U.S.C. §§ 881(a)(6) and (a)(7) where the property in question is a mortgage interest held by a bank. Title 21 U.S.C. § 881(a)(7) provides that "no property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by the owner to have been committed or omitted without the knowledge or consent of that owner."

"Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities." *United States v. 15603 85th Ave. North, Lake Park,* 933 F.2d 976, 981 (11th Cir.1991). The burden is on the claimant to prove absence of actual knowledge that the property constituted proceeds traceable to narcotics trafficking. *United States v. Four Million, Two Hundred Fifty–Five Thousand Dollars,* 762 F.2d 895, 907 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). The innocent owner defense turns on the claimant's actual knowledge, not constructive knowledge. *United States v. Real Property at 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir.1991). Lien holders have the right to assert their claim of innocent ownership. *See United States v. A Parcel of Land, 92 Buena Vista Avenue, Rumson, NJ,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (rejecting reasoning that innocent owner defense may be invoked only by persons who are bona fide purchasers for value and by those who acquired interest before acts giving rise to forfeiture took place).

The district court considered only the issue of whether Republic failed to meet its burden of showing lack of actual knowledge. The court stated that under these circumstances it need not decide whether the claimant must prove it did all that reasonably could be expected to prevent the proscribed use of his property, under the dictum of *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), to show lack of consent. Thus, this is not an issue in this appeal.

The district court's findings of fact are subject to a clearly erroneous standard of review. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The district court's legal conclusions are subject to plenary review. *15603 85th Ave. North,* 933 F.2d 976 at 979.

## DISCUSSION

The evidence presented on behalf of Republic was that the bank did not know of and did not consent to the illegal conduct which forms the basis for the government's forfeiture action. The government argued that Republic must establish lack of knowledge and lack of consent by showing that it took reasonable, available steps to insure that it was not acquiring an interest in property acquired with drug proceeds, *i.e.*, make further inquiries concerning the source of the funds and the borrower. But this must presuppose that it had *some* knowledge of the tainted source of funds to put it on notice before requiring a showing of lack of consent. In any event, the district court ruled that in this case it need not decide this particular characteristic of consent incorporated by *Calero-Toledo, supra*, in which the statute at issue did not provide an exception for innocent owners.

The bank's expert expressed an opinion, based on his experience, as to the regularity of the loan procedures. However, the court credited the government's expert, whose response to the question of whether the procedures followed by Republic conformed to reasonable banking practices was that the procedures were "unusual" and "unsound." The court relied on the expert's negative assessment of commercial unreasonableness, and made an analytical leap to reach the conclusion that this supports a finding that Republic had actual knowledge.

The district court found that the facts, when *considered in their totality*, suggest actual knowledge, if not complicity on the part of the lender. The court's analysis, using a standard of reasonable banking practices, focused, in part, on Republic's failure to pursue additional financial information through documentation and investigation of Thule to support the commercial reasonableness of the loan. The court made the following factual findings on the issue of Republic's state of knowledge:

1. Thule, the borrower, is a Panamanian shell corporation;

2. The borrower's primary asset is a residence;

3. The residence was vacant at the time;

4. The borrower was about to sell its primary asset;

5. The lender did not ask the purpose of the loan;

6. The lender failed to conduct a title search;

7. The corporate borrower and Antonio Munoz Caballero ("Munoz"), the sole stockholder and a guarantor on the mortgage, were unknown to the lender;

8. Ramon Puentes, the second guarantor, had no known connection with the borrower;

9. Puentes made inconsistent statements of ownership;

10. The lender offered an $800,000 one-year balloon note on property valued at $1.2 million;

11. The borrower had no known source of repayment;

12. Fred de la Mata, president of Republic, was intimately involved in the transaction;

13. The lender quickly approved the loan outside normal channels;

14. The lender cannot document board approval of the loan, although documents indicate the board endorsed the loan after the closing;

15. Puentes, the guarantor, used part of the loan proceeds to buy expensive gifts for the bank president's family, and to buy an airplane ticket to Geneva for Iglesias;

16. The lender transferred the proceeds of the loan to the borrower's Swiss bank account.

We are of the view that findings 1, 2, 3, 4, 7, 10, 12 are neutral to the issue of actual knowledge.

The court rationalized that Republic's willingness to conduct business with Thule, a shell corporation, even through Puentes [who said he was a part owner of the property], fit into the totality of the *suspicious* circumstances. We view the bank's loan procedure for asset-based bridge loans as neither unusual nor suspicious. *See Matter of Clark Pipe and Supply Co., Inc.*, 893 F.2d 693, 700 (5th Cir.1990) (typical documents in asset-

based financings); *United States v. A Parcel of Real Property,* 650 F.Supp. 1534, 1541 (E.D.La.1987) (approving mortgage consistent with past practice).

The loan was closed at Republic's office with Puentes, Munoz, the borrower's attorney and another bank lawyer. De la Mata was not present. Ms. Matas, Republic's lawyer who closed the loan, testified without contradiction that the closing was uneventful. She never heard of Iglesias. There was nothing unusual that the property was owned by a Panamanian corporation. It is a common way of owning property in South Florida.

We fail to perceive how these facts support a finding that Republic was not an innocent owner. On the contrary, they seem to prove Republic's case. We find that the commercial aspects of the bank's conduct support its innocence through both testimony and documentation, similar to the relevant factors in *A Parcel of Real Property, id.*

■ Upon consideration of the record, we conclude that findings 5, 6, 8, 9, 11, 13 and 14 are clearly erroneous.

The district court found that Republic could not demonstrate how the loan was to be repaid or establish a repayment schedule. The loan called for payment of interest every three months and the principal to be paid in one year. The evidence established that this was a bridge loan to be repaid from the proceeds of the sale of the property which was being actively pursued.

The court attached significance to the unaudited financial statement of Thule. Since the real estate was its primary asset, it was not necessary to have an audited statement showing profit and loss for the single-asset, non-operating corporation.

The court found that the collateral was sufficient to cover the loan, but found that even though the property was for sale, Republic did not secure an undertaking by the borrower to use the proceeds of the sale for repayment of the loan. This finding is clearly erroneous because the loan documents required payment in full upon the sale of the property.

The court found that the president of Republic had an unusually close involvement in the loan transaction, citing the fact that de la Mata and other bank officials [the chairman of the bank's loan committee] personally inspected the property. The president, often in the company of other bank officials, inspected property which was intended to collateralize large loans. We see nothing nefarious about this.

The court found it out of the ordinary that Republic's president presented the loan to the board during a break in a bank seminar held at a hotel. There is no doubt from the evidence that the loan was approved by Republic's Loan Committee. De la Mata did not have individual authority to make this loan. There was no issue raised at the trial suggesting that the Board of Directors of the bank was supposed to have anything to do with approving this loan. Both the findings of the district court that "the lender cannot document board approval of the loan" and that "lender quickly approved the loan outside normal channels" are clearly erroneous.

There was some necessity for Republic to take prompt action on this loan application due to the pending offer by Westfield to make a loan of $750,000 based on asset value without a financial statement or approval. There was no conflicting evidence on the Westfield loan commitment. The district court stated that "[t]hat loan offer may well have been improper. Even so, Republic cannot be absolved by another lender's wrongdoing." There is no record support that Westfield's actions were improper or that it was a wrongdoer. These findings are clearly erroneous.

As to finding of fact fifteen, that "Puentes, the guarantor, used part of the loan proceeds to buy expensive gifts for the bank president's family, and to buy an airplane ticket to Geneva for Iglesias," we consider the fact that Puentes had known Fred Jr. (who did not know Iglesias) since he was a boy and wanted to give him a wedding gift, not to be damning as "the most revealing fact in the record," but more in line with the fact that other bank customers made generous gifts to the president's son on that occasion. If this was considered a bribe (which the district

court did not find), it could not be imputed to Republic. *See American Nat'l Bank of Nashville v. Miller,* 229 U.S. 517, 521, 33 S.Ct. 883, 884, 57 L.Ed. 1310 (1913). As far as purchasing a ticket to Geneva for Iglesias, there is no showing that the Republic had any knowledge of this.

Finding of fact sixteen was based on an after-the-fact transaction and should not have been considered by the court. Relevant evidence of knowledge concerned what transpired up until the time the loan was made and the mortgage interest was acquired by the bank. *See United States v. 15603 85th Ave. North, Lake Park,* 933 F.2d 976, 982 n. 5 (11th Cir.1991) ("An innocent investor who 'learns too late' must be protected").[1]

The district court held that Republic had not established commercial reasonableness, with an assumption of deliberate ignorance or willful blindness. The record establishes that de la Mata did not rely on Munoz as guarantor or on Thule; that the reason he did not investigate the officers or status of Thule as a new customer was because he relied on Puentes, as guarantor, who was a long-standing customer of the bank and had received a million dollars in loans from Republic. Puentes was a reliable source of business and de la Mata wanted to make a profit for the bank. We view these facts along with the financial arrangements to support commercially reasonable and innocent conduct.

The district court's premise that the totality of its factual findings defeats Republic's innocent owner defense is undermined when seven of its findings of fact are neutral and seven are clearly erroneous.

The district court held that "de la Mata deliberately closed his eyes to what he had every reason to believe was the truth." The district court drew an inference of actual knowledge by de la Mata's not asking why Puentes was selling the Miraflores property on behalf of the Panamanian corporation.

We are at a loss to understand why Republic should have been interested in the reason why a borrower desires to sell its property.

■ The rationale based on the "suspicious circumstances" misapplies the actual knowledge standard of section 881(a)(7). *Compare United States v. Four Million, Two Hundred and Fifty–Five Thousand,* 762 F.2d at 906 (proper application of "actual knowledge" standard). In *Four Million, Two Hundred and Fifty–Five Thousand,* sufficient evidence supported an inference that the claimant was *aware* that the deposits in a bank account were drug tainted. The district court found that the claimant's actions "indicated a tacit acknowledgment of his disquieting belief" and that he had a "gnawing belief that the funds being dealt with were tainted." *Id.*

There is nothing in the legislative history of the statute that requires a standard of "should have known". In any event, it is uncontradicted that Iglesias was not known to the bank and played no role in the mortgage process. He was never a record owner of the property. There is no evidence that when Republic made the loan in 1987 it knew that four years earlier a drug dealer purchased the land and constructed the residence with the proceeds of an illegal drug transaction. Moreover, there were no reasonable steps that could have been taken by Republic which would have revealed (1) Thule's connection to Iglesias; (2) Iglesias' connection to the Miraflores residence; (3) Iglesias connection to drug transactions; (4) the connection between the proceeds of the illegal transactions in the purchase and construction of the residence, which were the ultimate facts that Republic must have known for it to lose its innocent owner status. Lacking a factual basis for its conclusion, the district court erred in inferring "Republic's knowing involvement" fell within the proscribed conduct of "knowingly doing business

1. In that case, funds of a claimant were commingled with drug proceeds to purchase real property. The factual distinction in that case which supports the court's statement concerning actual knowledge "at any time prior to the initiation of the forfeiture proceeding," is that the investor in *15603 85th Ave.,* who was denied innocent owner status, had *continued* to contribute funds for the purchase of real property with the knowledge that his brother [the co-owner] did not have a legitimate source of income and with knowledge that some income invested in the real property was derived from drug dealings.

with drug dealers." *Four Million, Two Hundred and Fifty–Five Thousand,* 762 F.2d at 905.

"When the forfeiture statutes are reviewed in their entirety it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *United States v. United States Coins and Currency,* 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971).

## CONCLUSION

A careful review of the record convinces us that Republic bore its burden that it did not have actual knowledge that drug proceeds were traceable to the mortgaged property. The judgment of the district court is RE-VERSED.