41 F.3d 1448
 63 USLW 2447
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE PARCEL OF REAL ESTATE LOCATED AT 6640 SW 48TH ST, MIAMI,
DADE COUNTY, FLORIDA, including all appurtenances
thereto and all improvements thereon, Defendant,
Fred M. Ganz, Tax Collector, Dade County, Claimant,
Jose Larraz, Sr., Claimant-Appellant.
 No. 93-5139.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 6, 1995.
 
 Jose Larraz, Sr., Miami, FL, for appellant.
 Jeanne M. Mullenhoff, Dawn Bowen, and Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Appellant Jose A. Larraz, Sr., appeals the district court's summary judgment order of civil forfeiture against property in which he claims a lien. We AFFIRM.
 
 I.
 
 2
 Reinaldo Luis and Maria del Carmen Moguel de Mendicuti purchased property located at 6640 S.W. 48th Street in Miami, Florida on December 12, 1984. They held the property as joint tenants with right of survivorship.
 
 
 3
 In April 1990, a United States Customs Agent received information from confidential informants accusing Luis of smuggling drugs. In May, June, and July 1990, Luis held a series of meetings with the confidential informants at the defendant property. The meetings revealed that Luis was involved in smuggling cocaine from the Caribbean to South Florida. On August 8, 1990, at the defendant property, Luis's associate offered the confidential informants $15,000 as a cash deposit for their participation in drug smuggling.
 
 
 4
 Luis was arrested September 7, 1990 at the defendant property. On September 9, 1990, he retained Larraz as legal counsel. The fee for the representation was established.[1] On September 12, 1990, Luis transferred his entire interest in the defendant property to Mendicuti in exchange for ten dollars. The transfer was made by warranty deed prepared by Larraz.[2] Mendicuti then executed a $50,000 promissory note and a mortgage deed on the property in favor of Larraz to satisfy the legal fee. The mortgage deed covered "all the certain land of which the mortgagor is now seized and in possession" at the defendant property. Both deeds and the promissory note were recorded in the Dade County Property Records on September 13, 1990. Larraz concedes that he knew of Luis's illegal activity on September 12, 1990, the date of the transfer.
 
 
 5
 Luis was convicted of conspiracy to import cocaine, in violation of 21 U.S.C. Sec. 963. On March 5, 1991, the United States filed a civil forfeiture action against the defendant property "pursuant to 21 U.S.C. Sec. 881(a)(7) on the grounds that such property was used or intended to be used in any manner or part, to commit, or to facilitate ... the conspiracy and/or importation, into the United States, of 1,497 kilograms of cocaine." The complaint alleged the defendant property was valued at $118,000.
 
 
 6
 Luis and Mendicuti did not file claims in the defendant property and default judgment was entered against them on December 4, 1991. Larraz filed a claim in the property on May 24, 1991.[3] The claim alleged that Larraz was "entitled to a lien superior to the interest of the United States of America against the property described in the Complaint in the amount of $50,000 together with interest thereon."[4] Larraz also filed an answer to the government's complaint on June 4, 1991. As an affirmative defense, he alleged that his interest came "from the ownership interest in the property of Maria Del Carmen Moguel de Mendicuti who constitutes an innocent party without knowledge of the criminal activities alleged to have been committed by Reinaldo Luis and who is not a party to these proceedings."The government moved for summary judgment, arguing that Larraz was not an innocent owner who could avoid forfeiture.[5] Larraz responded and filed a cross-motion for summary judgment, arguing that his mortgage interest was not forfeitable because it rested only on the property owned by Mendicuti, "who at all times was an innocent co-owner of the subject property and who conveyed only her interest in that property to Claimant by way of the mortgage that she provided to Claimant in payment of Mr. Luis's attorney's fees."
 
 
 7
 The district court entered summary judgment in favor of the government. 831 F.Supp. 1578. The district court found that Larraz was not an innocent owner under 21 U.S.C. Sec. 881(a)(7) because he knew of allegations of illegal activity at the time he received his interest in the property. It concluded that, in cases of post-illegal act transferees, "an examination of the issue of consent is inappropriate."
 
 II.
 
 8
 Under 21 U.S.C. Sec. 881(a)(7), the government may initiate civil forfeiture proceedings against
 
 
 9
 [a]ll real property, including any right, title, and interest in the whole of any lot or tract of land ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.
 
 
 10
 A property owner may defend against forfeiture by asserting that he is an innocent owner. The statutory defense for innocent owners provides, "no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. Sec. 881(a)(7).
 
 
 11
 The Supreme Court interpreted the innocent owner defense found in 21 U.S.C. Sec. 881(a)(6) in Buena Vista, --- U.S. ----, 113 S.Ct. 1126. That case resolved a split among the circuits as to when title to forfeited property vests in the government. The plurality stated that one who acquires forfeitable property after an illegal act has occurred but before forfeiture may assert the innocent owner defense because title does not vest in the government until the date of forfeiture.[6] Id. at ----, 113 S.Ct. at 1137. The Supreme Court did not decide whether a court should look to an owner's knowledge at the time of the underlying illegal activity or at the time the owner acquired an interest in the property in determining whether an innocent owner defense is available. Id. The instant case provides us an opportunity to resolve this unanswered question and to apply Section 881(a)(7) to an owner who acquired his interest after the illegal activity which supports forfeiture.
 
 III.
 
 12
 The critical issue we must decide is whether the knowledge element of the innocent owner test refers to knowledge at the time of the illegal activity or to knowledge at the time the property is transferred. Larraz argues that the court should determine his innocence at the time the illegal activity occurred. The government contends that the court should determine a claimant's innocence at the time property is acquired.
 
 
 13
 In United States v. One Single Family Residence Located at 6960 Miraflores Avenue, 995 F.2d 1558, 1564 (11th Cir.1993), we characterized a bank mortgagee as an innocent owner because at the time it made a loan, it had no knowledge of prior illegal activity. Although not exactly dispositive[7], 6960 Miraflores Avenue suggests that we should look for knowledge at the time of the transfer and not at the time of the illegal activity. We agree. Accordingly, we look to Larraz's knowledge at the time he acquired his mortgage interest in the defendant property.
 
 IV.
 
 14
 Larraz concedes that he had knowledge of the illegal activity which supported forfeiture when he took his mortgage interest in the property. He argues that he is still an innocent owner because he did not consent to Luis's illegal activity on the property. The government claims that the consent prong of the innocent owner defense should be disregarded where a claimant acquired his interest after the illegal activity occurred.
 
 
 15
 The innocent owner defense established in Section 881(a)(7) uses the phrase "without the knowledge or consent of the owner." Courts have offered various interpretations of this phrase; most of them, however, applied to pre-illegal act owners. The circuits have disagreed as to whether this language should be read disjunctively, to afford the defense if the transferee either was without knowledge or did not consent, or conjunctively, to afford the defense only when the transferee was without knowledge and did not consent.[8] The law in this circuit is not clear. In some instances, this court has noted that a claimant can avoid forfeiture by proving either lack of knowledge or lack of consent. See, e.g., United States v. One Parcel of Real Estate at 1012 Germantown Road, 963 F.2d 1496, 1500 (11th Cir.1992). In other instances, this court has noted that an innocent owner is one who has no knowledge and has not consented. Miraflores, 995 F.2d at 1561; United States v. 15603 85th Avenue North, 933 F.2d 976, 981 (11th Cir.1991). Because the apparent intra-circuit split involves the appropriate interpretation for pre-illegal act owners, we need not resolve it in this case.
 
 
 16
 Instead, we must determine the applicability of the knowledge and consent prongs when the claimant had no contact with the defendant at the time the illegal activity occurred. Such a claimant naturally would have had no opportunity to consent to the illegal activity and, under Larraz's interpretation, would always receive innocent owner status regardless of his later-acquired knowledge of illegal activity.
 
 
 17
 We have described Section 881(a)(7) as reflecting "two interrelated aims of Congress: to punish criminals while ensuring that innocent persons are not penalized for their unwitting association with wrongdoers."[9] 1012 Germantown Road, 963 F.2d at 1496, citing United States v. 15621 S.W. 209th Avenue, 894 F.2d 1511, 1513 (11th Cir.1990). Thus, we must interpret Section 881(a)(7) so as to give it a logical meaning which is not at odds with this purpose. In re Colortex Industries, Inc., 19 F.3d 1371, 1375 (11th Cir.1994). We are obligated to construe the provision to avoid an absurd result if another interpretation is more consistent with Section 881(a)(7)'s purpose. United States v. X-Citement Video, Inc., --- U.S. ----, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (interpreting Protection of Children Against Sexual Exploitation Act so as to avoid an absurd result), citing Public Citizen v. Department of Justice, 491 U.S. 440, 453-55, 109 S.Ct. 2558, 2566-67, 105 L.Ed.2d 377 (1989); United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Allowing post-illegal act transferees who knowingly take an interest in forfeitable property an innocent owner defense because they were not on the scene early enough to consent to the illegal activity would not serve this purpose and would be an absurd construction of the statute. A claimant like Larraz is not an innocent person who has "unwittingly" associated himself with a wrongdoer.
 
 
 18
 Instead, we believe the best approach is to hold that the "lack of consent" defense of Section 881(a)(7) is not available to post-illegal act transferees. Under this approach, if a post-illegal act transferee knows of illegal activity which would subject property to forfeiture at the time he takes his interest, he cannot assert the innocent owner defense to forfeiture.[10]
 
 
 19
 Our interpretation is at odds with a recent Third Circuit case interpreting 21 U.S.C. Sec. 881(a)(4)(C). United States v. One 1973 Rolls Royce, 43 F.3d 794 (3d Cir.1994).[11] In that case, a split panel held that a post-illegal act transferee who did not consent to illegal activity would be safe from forfeiture under 21 U.S.C. Sec. 881(a)(4)(C)'s innocent owner defense even though he knew of the illegal activity at the time he acquired his interest. After criticizing the district court opinion in our case, the majority opinion explicitly rejected an approach which would ignore the consent prong of the innocent owner test when applying the innocent owner defense to post-illegal act transferees. Id. at 818.[12]
 
 
 20
 We decline to follow the Third Circuit's reasoning. Classifying post-illegal act transferees as innocent owners because they had no opportunity to consent creates a sweeping grant of immunity from forfeiture and a gaping loophole in an intentionally comprehensive forfeiture policy. We agree with the dissenting opinion in 1973 Rolls Royce that such an approach crosses the line between judicial restraint and judicial abdication. Id. at 821. Accordingly, we hold that Larraz, as a post-illegal act transferee, cannot rely on the consent prong of the innocent owner defense. His knowledge of Luis's illegal activity before he acquired his mortgage interest prevents him from being an innocent owner.[13]
 
 V.
 
 21
 Larraz further alleges that his interest derives only from Mendicuti's original half of the property and that her innocence protects him from forfeiture. Larraz's argument is not persuasive.[14]
 
 
 22
 First, the language of the mortgage deed creates a lien on the entire property, not just the section originally owned by Mendicuti. Where there are only two joint tenants, a conveyance of the entire interest of one joint tenant to the other terminates the cotenancy. 12 Fla.Jur.2d Sec. 8; 20 Am.Jur.2d Sec. 16. See also, Kozacik v. Kozacik, 26 So.2d 659, 661 (Fla.1946). Thus, when Luis transferred his interest to Mendicuti by warranty deed, he vested her with a unified fee simple in the property. Larraz's mortgage deed was executed after the warranty deed and included "all the certain land of which [Mendicuti] is now seized and in possession." Thus, the mortgage deed created a lien on the unified fee simple held by Mendicuti after the warranty deed was executed.
 
 
 23
 Second, Larraz cannot claim any innocent ownership interest in Mendicuti's fee simple because he commingled forfeitable property with allegedly nonforfeitable property. In 15603 85th Avenue North (the Spears case), 933 F.2d at 981, we held that
 
 
 24
 when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture.
 
 
 25
 We extend this reasoning to the instant case and hold that Larraz, by knowingly commingling Mendicuti's allegedly legitimate interest with Luis's forfeitable interest, subjected both interests to forfeiture.[15]
 
 
 26
 Third, even if Mendicuti had not merged her interest with Luis's, she gave up any innocent ownership status she might have by allowing a default judgment to be entered against her. It is not clear how Mendicuti's alleged innocence can purify Larraz's interest where Mendicuti has not proved that she is an innocent owner.
 
 VI.
 
 27
 In sum, we hold that Larraz is not an innocent owner under 21 U.S.C. Sec. 881(a)(7) because he had knowledge of Luis's illegal activity at the time he acquired his interest in the defendant property. We further hold that Larraz cannot avoid forfeiture by arguing that his interest in the property flows directly from Mendicuti.
 
 
 28
 Accordingly, we AFFIRM.
 
 
 
 [1]
 While Larraz contends that the fee was set at $50,000, Luis later suggested that a lower amount was agreed upon. This is one of a series of disputed facts which Larraz alleges precludes summary judgment. Because all facts necessary to decide this case are undisputed, no genuine issue of material fact prevents us from reaching a decision
 
 
 [2]
 Luis's wife Teresa joined Luis in executing the warranty deed
 
 
 [3]
 Larraz filed a verified claim of ownership on December 18, 1991. The second claim was identical to the first in all material aspects. It is not clear why he filed a second claim of ownership
 
 
 [4]
 Fred M. Ganz, Dade County Tax Collector, also filed a claim which is not at issue in this appeal
 
 
 [5]
 The government's summary judgment motion and Larraz's response were filed before the Supreme Court's decision in United States v. 92 Buena Vista Avenue, Rumson, N.J., --- U.S. ----, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (interpreting innocent owner defense). The district court issued its ruling after Buena Vista
 
 
 [6]
 Under Buena Vista 's interpretation of the relation back doctrine, title vests on the date of forfeiture but relates back to the date of the illegal activity. Id. at ----, 113 S.Ct. at 1137
 
 
 [7]
 The bank in Miraflores lacked knowledge both at the time the illegal activity occurred and at the time it acquired its mortgage interest
 
 
 [8]
 For disjunctive readings, see United States v. 141st St. Corp., 911 F.2d 870, 877-80 (2d Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); United States v. 6109 Grubb Road, 890 F.2d 659 (3d Cir.1989). For a conjunctive reading, see United States v. Land at Lot 111-B, 902 F.2d 1443, 1445 (9th Cir.1990)
 
 
 [9]
 Congress did not discuss the fate of post-illegal act transferees when it drafted Section 881. Before Buena Vista, a post-illegal act transferee's interest in the property was automatically eradicated because title vested in the government on the date of the illegal act. See United States v. Lake Forrest Circle, 870 F.2d 586, 594 (11th Cir.1989)
 
 
 [10]
 Dicta in Justice Stevens's Buena Vista plurality opinion supports such a conclusion. It notes that, "equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property." --- U.S. at ----, 113 S.Ct. at 1137. Additionally, the Ninth Circuit has endorsed this view in United States v. 10936 Oak Run Circle, 9 F.3d 74, 76 (9th Cir.1993) (Section 881(a)(6) "bars an owner with knowledge of the origin of the property in drug proceeds from asserting the innocent owner defense.")
 
 
 [11]
 Section 881(a)(4)(C) provides an innocent owner defense to forfeiture of conveyances under Section 881(a)(4). The defense provides that no owner's interest shall be forfeited "by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner." 21 U.S.C. Sec. 881(a)(4)(C)
 
 
 [12]
 The Third Circuit felt bound to a disjunctive reading of the "knowledge or consent" clause by its precedent regarding pre-illegal act owners. See 6109 Grubb Road, 890 F.2d 659. The appropriate reading of the "knowledge or consent" clause for pre-illegal act owners is not so well-established in our circuit. Moreover, we believe the differences between a pre-illegal act owner and a post-illegal act transferee who knew of the illegal activity before transfer would justify ignoring the consent prong for such post-illegal act transferees regardless of how we interpret the "knowledge or consent" clause for pre-illegal act owners
 
 
 [13]
 The Southern District of Michigan has also taken this approach. United States v. Certain Real Property, 91-CV-76792-DT at * 12 (S.D.Mich. June 8, 1994) (An inquiry into consent under Section 881(a)(7) is "not appropriate ... where a claimant acquired the property after the illegal activity took place.")
 
 
 [14]
 Larraz relies on two cases which are easily distinguishable. 15621 S.W. 209th Avenue, 894 F.2d 1511, involved an innocent co-owner's interest in a tenancy by the entirety, not a joint tenancy. In re Ford Ranger Pickup, 598 So.2d 1070 (Fla.1992), involved the forfeiture of a co-owner's interest under Florida's forfeiture provision, not federal law
 
 
 [15]
 The Spears case provided an exception for one who made "reasonable efforts" to separate the commingled funds. Id. At oral argument, Larraz suggested that his taking a mortgage interest in Mendicuti's half was an attempt to separate out the legitimate funds. This is unpersuasive, however, because Larraz's mortgage interest was not limited to Mendicuti's original half, and no other efforts to keep the interests separate are apparent