**Rafael SANTANA, Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, Defendant.**

**Civil No. 3:CV–97–433.**

United States District Court, M.D. Pennsylvania.

June 19, 1997.

John J. McCann, U.S. Attorney's Office, Scranton, PA, for U.S.

William C. Costopoulos, Lemoyne, PA, for Rafael Santana.

Andrew S. Quinn, John J. McCann, U.S. Attorney's Office, Scranton, PA, for U.S. Customs Service.

## *MEMORANDUM*

KOSIK, District Judge.

This matter derives from the consolidation of Santana's action seeking the return of government forfeited bonds totaling $300,000, and Government's forfeiture action seeking to have this court deem such bonds as forfeitable as a result of Santana's conviction for controlled substance offenses. See Document 1 (No. 96–1448) (Complaint to Compel Return of Property Seized); Document 1 (No. 97–433) (Verified Complaint of Forfeiture in Rem). The issue before this court is whether Government's action for forfeiture was filed prior to the expiration of the statute of limitations for such actions. In forfeiture proceedings, 19 U.S.C. § 1621 prescribes a limitation period of five years from "the time when the alleged offense was discovered" for the commencement of a forfeiture action. We find that the alleged offense was discovered at the latest in 1989, and, furthermore, that Government had knowledge as to the bonds connection to the forfeitable offense no later than 1990. Accordingly, Government's forfeiture action filed on March 18, 1997, was not within the five year limitation period and should be dismissed.

## I. BACKGROUND

Government began investigating Santana in the late 1980s suspecting him of participation in an illegal narcotics operation. This investigation resulted in the arrest of Santana in 1989. On October 12, 1989, Santana entered a guilty plea to one count of manufacturing, distributing, dispensing, or possessing with intent to manufacture cocaine and one count of criminal conspiracy. Subsequently, Santana was sentenced by this court to life imprisonment.

During the investigation of Santana, a member of the alleged conspiracy, Castagnola, turned government informant. Castagnola reported in 1989/1990 to federal agents that he physically viewed bonds that were delivered to Santana in the mid-eighties.

*See* Document 1 (No. 97–433), Affidavit of Robert Craven. Castagnola also reported during that time that Santana had informed him that in order to hide assets from federal investigators it was wise to invest in tax free bonds. *See id.* Castagnola also reported that the business was a front to Santana's illegal activity. *See id.*

Government seized the bonds on May 28, 1992, pursuant to a grand jury subpoena, from a relative of Santana. Government failed to provide notice of this seizure to Santana for a period of over three years. On August 2, 1996, Santana filed a complaint to compel the return of the property seized. *See* Document 1 (No. 96–1448). Government's forfeiture action was filed on March 18, 1997. *See* Document 1 (No. 97–433).

The issue that the parties ask this court to resolve is whether Section 1621's statute of limitations period commenced on the date the bonds were seized or at the time Government became aware of the narcotics violations, i.e. in the 1980s.

## II. DISCUSSION

It is undisputed by the parties that 19 U.S.C. § 1621 governs the limitations period for this action. Section 1621 provides that an action for forfeiture must be commenced within five years after the time when the alleged offense was discovered.[1] Government contends that the limitations period commenced in May of 1992 when the bonds were seized. Accordingly, Government contends that its filing of the forfeiture action in March of 1997 was within the limitations period. Santana contends that such a period commenced running when the alleged narcotics offense was discovered. Therefore, Santana requests this court to consider the limitations period as commencing sometime in the 1980s when Santana was investigated and subsequently arrested on narcotics violations.

As evident in the parties briefing and this court's own independent research, there is a dearth of precedence concerning the issue of when the limitation period commences. We will consider such precedence in turn.

A matter originating from the District of New Jersey and proceeding to the Supreme Court addressing this matter provides some guidance as to when the limitation period commences. *See United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, known as 92 Buena Vista Avenue,* 738 F.Supp. 854 (D.N.J.1990), *aff'd in part,* 937 F.2d 98 (3d Cir.1991), *aff'd,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). In *92 Buena Vista Avenue,* the courts were concerned with the forfeiture of a house that allegedly was connected to a drug conspiracy. The homeowner was attempting to defeat the forfeiture primarily under the "innocent owner" defense. However, the statute of limitations issue was initially raised. The facts are that the house was bought in 1982 in the name of the homeowner. It was alleged by the government that the purchase money for the house was secured by a third party through the operation of a narcotics ring. The forfeiture action was premised on the alleged purchase of the home with drug proceeds and an alleged illegal transaction that occurred on the actual premises in 1986.

The forfeiture action was filed in April 1989, and the district court found that, in accordance with Section 1621, the government became aware of the actionable violation in 1986.[2] Because five years had not past, the district court ruled that the limitations period did not run.

In affirming the district court, the Third Circuit provided a discussion concerning the

---

1. The statute further provides that the commencing period of the statute in instances of fraud or concealment is the date of the discovery of the fraud or the discovery of the concealment. Government does not set forth an argument that such bonds were concealed physically or fraudulently. Even if Government set forth such an argument, Castagnola's testimony as to seeing such bonds in 1989/1990 would operate to commence such a period as of that time.

2. This court concludes that the transaction occurring on the premises was the action the District Court of New Jersey attributed as knowledge to the government. The opinions from the district court, Third Circuit, Supreme Court, and the briefs filed to the Supreme Court indicate such, although none of the opinions specifically attribute such a finding to that transaction. The courts simply adopt a discovery date of 1986.

determination of whether proceeds sought to be forfeited are traceable to drug transactions. *See Buena Vista Ave.,* 937 F.2d at 104. The court stated that "[t]here is no need to tie the [property] to proceeds of a *particular identifiable* illicit drug transaction." *Id.* (citation omitted) (internal quotation marks omitted) (alterations in original). "[A]ll that is required is that a court be able to look at the 'aggregate' of the facts and find reasonable grounds to believe that the property probably was derived from drug transactions." *Id.* In finding that the limitation period had not tolled, it can be inferred through the Third Circuit's decision that the "alleged violation" was the transaction occurring on the premises in 1986. *See id.* at 105. This is when the government knew or should have known of the alleged offense and the availability of forfeiture.

The matter was appealed to the Supreme Court on the limited issue concerning the "innocent owner" defense.[3] *See United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). The court affirmed the Third Circuit's decision.

Another informative case is one deriving from the Eighth Circuit. *See United States v. Premises Known as 318 So. Third St.,* 988 F.2d 822 (8th Cir.1993). In determining when the statutory limitation period codified at Section 1621 commenced running, the court focused on when the government can be imputed with notice or knowledge of an alleged violation of federal criminal law which allows for forfeiture.

Finally, we find that the district court's decision in *United States v. $116,000 in U.S. Currency,* is instructive. *See* 721 F.Supp. 701 (D.N.J.1989). In that case, the government effectuated a raid, which resulted in the seizure of the currency, in September of 1983. The claimant was indicted in August of 1985. The government filed its forfeiture action in December of 1988. In that case,

the claimant contended that the limitations period commenced on the date of the raid which was over five years prior to the filing of the forfeiture action. The government countered stating that the period commenced running on the date it had uncovered sufficient evidence of a nexus between the currency seized and the illegal activity. The court, in ruling in the claimant's favor, consulted custom decisions because Section 1621 primarily relates to custom proceedings. The court adopted custom rulings suggesting that the period commences when the government possesses the knowledge as to the underlying violation. *See id.* at 703. The court stated:

> It is certainly consistent with ordinary and usual sense of the language "alleged offense was discovered" to conclude that seizure of property is either contemporaneous evidence of an alleged offense, or the result of prior discovery of an offense. It is also consistent with the common meaning of the language to conclude that in the absence of seizure, an offense is "discovered" when knowledge of the alleged wrong is received.

*Id.* at 703.

In dismissing the government's nexus argument, the court concluded:

> Under 19 U.S.C. § 1615 the government must have probable cause to institute the forfeiture proceedings. The government need not trace the cash to a specific transaction, or actually prove by a preponderance of the evidence a substantial connection to illegal gambling. The government must merely furnish probable cause, i.e. reasonable grounds to believe that a substantial connection exists between the money seized and the gambling operation.

*Id.* at 704 (footnote omitted).

The court found that by seizing the currency, the government had knowledge as to an underlying violation allowing for forfeiture. Therefore, the court stated that the operative date was 1983, the date the government

---

**3.** Although the Court in *92 Buena Vista Avenue* limited its review to the innocent owner defense, the Court in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) implied that the limitations

period commenced upon the discovery of the violation. *See James Daniel Good Real Property,* 510 U.S. at 45–47, 63–67, 114 S.Ct. at 497, 506–507.

knew of a forfeitable violation and contemporaneously seized the currency.

Turning to the facts of our case, it is undisputed that Santana was investigated for narcotics violations during the 1980s. It is also undisputed that Santana was arrested and plead guilty to a cocaine violation and a criminal conspiracy count in October of 1989. The bonds were seized from the brother-in-law of Santana in May of 1992. The forfeiture action was filed on March 18, 1997. This forfeiture complaint alleged:

> This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of personal properties purchased with proceeds traceable to the exchange of controlled substances in violation of Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and are therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

Document 1 (No. 97–433).

Government specifically referred that the violations forming the basis of their forfeiture was 21 U.S.C. §§ 841(a)(1), 846, the same provisions to which Santana plead guilty in 1989. Government sought forfeiture based on Santana's narcotics operation:

> In the late 1980's, the Office of Enforcement, U.S. Customs Service, Harrisburg, conducted an investigation into the SANTANA narcotics and money laundering organization. The investigation resulted in the arrest and conviction of several persons, including Raphael Santana in 1989.... The facts and circumstance supporting the seizure and forfeiture of the Defendant property are contained in Affi-

davit of United States Customs Service, Special Agent, Robert Craven....

Document 1 at 2.

Craven attested to the fact that sometime in 1989–1990, he was made aware of Santana's criminal enterprise and of the existence of bonds through government informant Castagnola. Castagnola informed Craven that Santana had informed him that investment in tax free bonds provided a means to hide assets from federal investigators. Castagnola also stated that Santana's business was very likely a front to a criminal enterprise.

As articulated *supra*, the statutory language allowing for the forfeiture of such property imposes a five year statute of limitations from the time of the *alleged violation*. Case law makes it clear that the seizure of the property is not an operative date unless the seizure occurred simultaneously with the discovery of the alleged violation.[4] Therefore, Government's argument that the seizure of the bonds was the operative date fails because, in this case, the discovery of the violation and the seizure were not simultaneous.

The operative date is the date when government knew or should have known of the alleged violation.[5] It is clear from Government's own forfeiture complaint that the alleged violation is Santana's narcotics and criminal conspiracy conviction. It is undisputed that such violations occurred during the 1980s.[6] Therefore, a forfeiture action premised on such violations had to be commenced at the latest in 1995. Government failed to commence such an action until 1997 for undiscernible reasons. Accordingly, Government's forfeiture action is time barred.

---

4. Such a simultaneous discovery occurred in *$116,000 in U.S. Currency*.

5. *See United States v. Shabahang Persian Carpets, Ltd.*, 926 F.Supp. 123, 125 (E.D.Wis.1996).

6. By implication, Government suggests that the date of the discovery of the bonds is pertinent in our analysis. We disagree. First, as discussed, the nexus approach has been disqualified. *See United States v. $116,000 in U.S. Currency*, 721 F.Supp. 701 (D.N.J.1989). Second, even allowing such a consideration into our analysis would not alter our decision. Special Agent Craven attested, in his affidavit, that Castagnola informed him that he physically viewed bonds sent to Santana in the 1980s, that Santana informed him that tax free bonds were a method of hiding illegal proceeds from federal investigators, and that Santana's business was a front for a criminal enterprise. Accordingly, Government possessed sufficient knowledge as to the bonds forfeitability as early as 1989/1990.

### III. CONCLUSION

Having found that Government's forfeiture action (Document 1 (No. 97–433)) is time barred, Santana's motion to dismiss the forfeiture complaint (Documents 7 & 12 (No. 97–433)) is granted. As to Government's motion to dismiss Santana's Complaint (Document 10 (No. 96–1448)), it is denied in light of our dismissal of the forfeiture action. Santana's motion for summary judgment (Documents 14 & 19 (No. 96–1448)) is granted in part and denied in part. The motion is granted as to the statute of limitations issue. It is denied as to Santana's claim to the bonds. As stated *supra*, a majority of the bonds are bearer bonds and were seized by government from a party other than Santana. The other bonds were not issued to Santana. Accordingly, there exists a genuine issue of material fact as to the equitable owner of the bonds. A conference shall be set forthwith with counsel to address further disposition of this matter.

### *ORDER*

AND NOW, this 19th day of June 1997, IT IS HEREBY ORDERED AS FOLLOWS:

[1] Government's action for forfeiture of the bonds (Document 1 (No. 97–433)) is dismissed as time barred;.

[a] accordingly, Santana's motion to dismiss on statute of limitations grounds (Documents 7 & 12 (No. 97–433)) is granted; and

[b] Santana's motion for summary judgment (Documents 14 & 19 (No. 96–1448)) is granted with respect to its statute of limitations defense;

[2] Government's motion to dismiss Santana's Complaint (Document 10 (No. 96–1448)) is denied;

[3] a conference shall be set forthwith with counsel concerning further disposition of this matter.