UNITED STATES of America, Plaintiff-Appellant,

v.

Scottie Lynell CARRELL, Claimant-Appellee.

No. 99-14481.

United States Court of Appeals,

Eleventh Circuit.

May 29, 2001.

Appeal from the United States District Court for the Northern District of Alabama. (No. 98-00907-CV-PT-NE), Robert B. Propst, Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and VINING[*], District Judge.

BIRCH, Circuit Judge:

This appeal requires us to determine whether the statute of limitations had expired before the government brought a civil *in rem* forfeiture action on properties procured with proceeds from drug transactions. The district judge decided that the government should have known earlier that the properties, titled in the names of the drug offender's ex-wife and son, were purchased with drug money and dismissed the case with prejudice. We REVERSE and REMAND.

## I. BACKGROUND

Since the 1980's, the government had been investigating Homer Lynell Carrell, father of claimant-appellee Scottie Lynell Carrell, for drug trafficking. In 1985, Homer Carrell purchased one of the parcels at issue in this case from Lonnie Green for $10,000 in cash. Because he was about to commence a prison sentence for drug trafficking, Homer Carrell told Green not to execute a deed to him. Consequently, this property remained in Green's name until 1990, when Homer Carrell instructed Green to execute and deliver the deed to his ex-wife, Elsie Keith,[1] and his son, Scottie.

Homer Carrell purchased the second parcel of land from Jimmy Robinson in exchange for sixteen used automobiles. Title was placed in the names of Elsie Keith and Scottie. Both deeds were recorded properly in the Jackson County, Alabama, land records in August, 1990. After an indictment alleging that,

[*]Honorable Robert L. Vining, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

[1]Elsie Keith testified at the April 7, 1999, hearing on claimant's motion to dismiss that she and Homer Carrell had been divorced for approximately 20 years.

in July, 1992, Homer Carrell had intimidated a federal witness who was providing information regarding the investigation of his drug trafficking activities to a federal grand jury, was returned on September 7, 1992, Carrell fled the jurisdiction. He remained a fugitive until his arrest in Tennessee in March, 1998.

On May 3, 1993, the government seized a 147-acre farm in Jackson County that Homer Carrell had inherited from his mother. The government alleged in its complaint that the farm was subject to forfeiture on the same grounds as those in this complaint.[2] The two properties at issue in this case were transferred to Scottie Carrell by February 2, 1995 deeds that were duly recorded in the Jackson County land records.

The government filed an *in rem* civil forfeiture action against the two defendant parcels on December 23, 1996. On motion of Scottie Carrell, the sole claimant, the complaint was dismissed without prejudice based upon our former panel decision in *United States v. 408 Peyton Road, S.W.,* 112 F.3d 1106 (11th Cir.1997), *vacated,* 133 F.3d 1378 (11th Cir.), *aff'd on reh'g,* 162 F.3d 644 (11th Cir.1998) (en banc), *cert. denied,* 526 U.S. 1089, 119 S.Ct. 1500, 143 L.Ed.2d 654 (1999).[3] Scottie also raised the issue that the statute of limitations had expired, but that issue was not addressed given the disposition of the case.

On March 19, 1998, fugitive Homer Carrell was arrested in Tennessee. The government filed this civil forfeiture action against the defendant real properties under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) on 16 April 1998. In its complaint, the government alleged that Homer Carrell, a known drug dealer and fugitive from justice, purchased the first defendant parcel in 1985 and the second defendant parcel in 1990 with proceeds from his unlawful cocaine and marijuana trafficking. The complaint further stated that Homer Carrell placed title for each property in the names of his ex-wife and son for concealment, all in violation of 18 U.S.C. § 1956, which subjected the properties to forfeiture under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). On the government's motion, a magistrate judge entered a warrant for the arrest of the defendant properties on May 4, 1998. This warrant directed the United States Marshal for the Northern

---

[2]In the forfeiture action against that property, Elsie Keith sought to enforce a judgment against Homer Carrell for child support arrearage. This claim was denied because she lacked standing to enter the case, since she was not an owner of the property.

[3]In the original *Peyton Road* decision, a panel determined that the "post-and-walk" procedure of arresting real property, the procedure used by the government in the first case, was unconstitutional. That panel decided that due process was violated unless the owner had been afforded pre-posting notice and an opportunity for a hearing. On rehearing, our en banc court determined that the seizure violated the claimant's due process rights. We concluded that, where the government has not provided predeprivation notice and a hearing, but the property is determined to be subject to forfeiture following due process, the proper remedy is for the government to return rents or other proceeds realized from the property for the period of the unlawful seizure. In this case, however, no rents or proceeds from the subject properties accrued to the government.

District of Alabama to post the warrant of arrest on the defendant properties and to give appropriate notice to all potential claimants. Special agents of the United States Customs Service executed the warrant of arrest by posting a copy on the defendant real properties, and they executed service of notice and the complaint on all interested parties.

As in the first forfeiture proceeding, Scottie Carrell, as sole claimant, denied any knowledge of drug activity being connected with the properties. He again alleged that the properties were seized unlawfully by the government and that the forfeiture action was barred by the applicable five-year statute of limitations in 19 U.S.C. § 1621. He further moved to dismiss the government's forfeiture complaint with prejudice.

Following the government's response, the magistrate judge conducted a hearing on the motion to dismiss. The hearing included testimony from Elsie Keith and Scottie. Thereafter, the magistrate judge entered his report and recommendation, in which he determined that the forfeiture action was barred by the five-year statute of limitations. He concluded that the two parcels were not concealed because the respective deeds were on public record in 1990. Therefore, the magistrate judge recommended that the forfeiture action against the defendant real properties be dismissed with prejudice.

The government objected to the magistrate judge's report and recommendation on two bases. First, the government argued that the five-year limitations period under § 1621 did not begin to run until the government's discovery of the involvement of the defendant properties with Homer Carrell's drug crimes and that the discovery was revealed by an investigation that occurred in April, 1996. Second, the government contended that it was required to possess probable cause that Homer Carrell was linked to the two defendant properties before it could be said to have discovered the crime, which did not occur until the 1996 investigation. It is the government's position that the time when the defendant properties were titled in names other than Homer Carrell constituted concealment, which must be excluded in calculating the limitations period under § 1621.

In a memorandum opinion, the district judge stated that "the relevant issue is when the Government 'knew or should have known of the alleged offense and the availability of forfeiture.' " R1-19-3. The judge determined that the government, by searching the county property title records, "could have discovered the situation through an investigation of the real property holdings of Carrell's son and ex-wife." *Id.* at 6. Consequently, the district judge adopted the magistrate judge's recommendation and dismissed the government's forfeiture action with prejudice. This appeal followed.

II. DISCUSSION

In an appeal from an *in rem* civil forfeiture pursuant to § 881(a)(6), we review the district judge's factual findings for clear error, and plenary review is the standard for the conclusions of law. *United States v. 15603 85th Ave. N.,* 933 F.2d 976, 979 (11th Cir.1991). "In this circuit, the existence of probable cause to support a forfeiture is a matter of law, and thus subject to plenary review on appeal." *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 903 n. 17 (11th Cir.1985). Since it is a question of law, we review a district judge's interpretation and application of a statute of limitations *de novo. Harrison v. Digital Health Plan,* 183 F.3d 1235, 1238 (11th Cir.1999) (per curiam).

In statutory construction, "the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results ." *United States v. McLymont,* 45 F.3d 400, 401 (11th Cir.1995) (per curiam). Nevertheless, "this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute." *Bailey v. USX Corp.,* 850 F.2d 1506, 1509 (11th Cir.1988). "A rule of law that is the product of judicial interpretation of a vague, ambiguous, or incomplete statutory provision is no less binding than a rule that is based on the plain meaning of a statute." *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 112, 110 S.Ct. 444, 451, 107 L.Ed.2d 420 (1989); *see Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 455 (11th Cir.1984) ("One reliable *indicium* of the clarity of Congress' language is consistent judicial interpretation of the provision in question.").

The operative statute of limitations provides: "No suit or action to recover ... any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered; except that .... the time ... of any concealment ... of the property[ ] shall not be reckoned within the 5-year period of limitation."[4] 19 U.S.C. §§ 1621 & (2); *see United States v. James Daniel Good Real Property,* 510 U.S. 43, 63, 114 S.Ct. 492, 505-06, 126 L.Ed.2d 490 (1993) (recognizing that § 1621 of the customs laws is the applicable statute of limitations for a civil forfeiture proceeding). Thus, the plain language of the statute states that the limitations period begins to run upon *discovery* of the "alleged offense." *Id.* While "offender" in statutory

---

[4]This limitations statute applies not only to *in rem* forfeitures but also to *in personam* actions "to recover any duty under section 1592(d), 1593a(d) ... or any pecuniary penalty or forfeiture of property accruing under the customs laws." 19 U.S.C. § 1621. Where § 1621 is applicable to an *in personam* civil action, the "alleged offense" is the actual misconduct committed by the defendant individual. This statute of limitations recently has been amended to be "5 years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later." Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106-185, 114 Stat. 202, 217 (2000). This amendment is not applicable to this appeal.

language generally refers to a human actor, which would implicate *in personam* theories of limitation, the Supreme Court has clarified that, in civil *in rem* forfeiture cases, the property is defined as the "offender," which "has a venerable history in our case law."[5] *Austin v. United States,* 509 U.S. 602, 615, 113 S.Ct. 2801, 2808, 125 L.Ed.2d 488 (1993); *see United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 363, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984) ("In contrast to the *in personam* nature of criminal actions, actions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object."). In addressing the civil forfeiture statutes at issue in this case, § 881(a)(6) and § 981(a)(1)(A), as well as the § 1621 statute of limitations, the Supreme Court explained: "Because forfeiture proceedings under the customs laws are *in rem,* it is clear that Congress intended that a forfeiture under § 881 ... would be a proceeding *in rem.* Congress specifically structured these forfeitures to be impersonal by targeting the property itself." *United States v. Ursery,* 518 U.S. 267, 288-89, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996) (citation omitted).

In 1978, Congress amended the Comprehensive Drug Abuse Prevention and Control Act of 1970 to provide for civil forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance [and] *all proceeds traceable to such an exchange.*" 21 U.S.C. § 881(a)(6) (emphasis added)[6]; *see United States v. Daccarett,*

---

[5]In civil *in rem* forfeiture actions, the Supreme Court repeatedly has recognized that the property is considered the "offender." *See, e.g., Bennis v. Michigan,* 516 U.S. 442, 446, 116 S.Ct. 994, 998, 134 L.Ed.2d 68 (1996) (reciting "a long and unbroken line" of Supreme Court cases embracing the rule that the *res* is the offender and that forfeiture is warranted notwithstanding the conduct or culpability of the owner); *J.W. Goldsmith, Jr.-Grant Co. v. United States,* 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921) ("[T]he thing is primarily considered the offender."); *Dobbins' Distillery v. United States,* 96 U.S. (6 Otto) 395, 401, 24 L.Ed. 637 (1877) ("Nothing can be plainer in legal decision than the proposition that the offence ... is attached primarily to the distillery, and the real and personal property used in connection with the same, without any regard whatsoever to the personal misconduct or responsibility of the owner ...."); *The Palmyra,* 25 U.S. (12 Wheat) 1, 14, 6 L.Ed. 531 (1827) ("The thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing ....").

[6]On November 10, 1978, Congress amended § 881 by adding § 881(a)(6), which was worded as follows in both 1990, when the subject deeds were recorded in the names of Scottie Carrrell and his mother as well as 1996, when the government discovered that the properties were purchased with proceeds traceable to Homer Carrell's drug transactions:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> ....
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange,

6 F.3d 37, 46 (2d Cir.1993) ("Now 'one of the most potent weapons in the judicial armamentarium,' civil forfeiture has become a favored method for imposing significant economic sanctions against narcotics traffickers." (citation omitted)). Apart from the former forfeiture of property actually involved in unlawful drug transactions, the Supreme Court noted that "to authorize the seizure and forfeiture of proceeds of illegal drug transactions ... marked an important expansion of governmental power." *United States v. 92 Buena Vista Ave., Rumson, N.J.,* 507 U.S. 111, 121, 113 S.Ct. 1126, 1133, 122 L.Ed.2d 469 (1993) (citation omitted); *see Alexander v. United States,* 509 U.S. 544, 563, 113 S.Ct. 2766, 2778, 125 L.Ed.2d 441 (1993) (Kennedy, J., dissenting) ("Civil *in rem* forfeiture is limited in application to contraband and articles put to unlawful use, or in its broadest reach, to proceeds traceable to unlawful activity."); *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 905 ("The statute authorizes the forfeiture of 'all proceeds traceable to [a narcotics] exchange,' 21 U.S.C. § 881(a)(6), and does not limit forfeiture to property found in the hands of a drug dealer." (alteration in original)).

We have recognized that "Congress clearly contemplated the forfeiture of property that once belonged to drug dealers, but subsequently was transferred, via 'legitimate transactions,' to third parties." *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 905. The Second Circuit cogently has explained how traceable proceeds may take different, ostensibly legitimate, forms:

> The statute [§ 881(a)(6) ] covers any asset exchanged directly for narcotics, such as a bar of gold or a car. Congress has also made it clear that "traceable proceeds" includes an asset indirectly exchanged for narcotics in one or more "intervening legitimate transactions, or otherwise changed in form ...." *See* Joint Explanatory Statement of Titles II and III, Psychotropic Substances Act of 1978, Pub.L.No. 95-633, *reprinted in* 1978 U.S.Code Cong. & Ad. News 9518, 9522 ("Explanatory Statement"). If the seller of drugs uses the cash he receives to buy a bar of gold or a car, that asset is "traceable proceeds," and so is a credit at a bank.
>
> ....
>
> Congress wished to reach proceeds of drug transactions exchanged through a series of "intervening" transactions and "changed in form."

*United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1158, 1161 (2d Cir.1986).

---

and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) (Supp. II 1978). On October 3, 1996, Congress amended § 881(a)(6) by inserting "or listed chemical" after "controlled substance," when it appears in the subsection. 21 U.S.C. § 881(a)(6) (Supp. II 1996).

In civil forfeiture actions under § 881(a)(6), the government must demonstrate only " '*probable cause for belief* that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute,' " or "the exchange of a controlled substance."[7] *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 903. "Under Section 881(a)(6), the government is not required to show that property is owned by a drug trafficker, but rather that it has a substantial connection to a drug transaction," even if the property belongs to third parties. *United States v. 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 629 (11th Cir.1986). Our circuit has defined probable cause in a civil forfeiture case as " 'reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion.' " *Id.* at 628 (citation omitted). We also have held that "circumstantial evidence can suffice to support a finding of probable cause" and recognized that "nothing in the statute requires evidence of a particular narcotics transaction."[8] *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 904; *see 900 Rio Vista Blvd.,* 803 F.2d at 629 n. 3 ("Section 881(a)(6) only requires that the government show probable cause that there is a substantial connection between the property and illegal drug transactions; it does not require a showing of a relationship between the property and a particular drug transaction."). In evaluating the evidence of proceeds traceable to drug transactions, we have eschewed " 'clinical detachment' " and endorsed "a common sense view to the realities of normal life" applied to the "totality of the circumstances." *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 903, 904 (citation omitted). Additionally, "hearsay testimony may be used to establish probable cause." *900 Rio Vista Blvd.,* 803 F.2d at 629 n. 2.

After the government has shown probable cause, the burden of proof shifts to the claimant "to establish, by a preponderance of the evidence, that the [drug proceeds] had not been used in violation of the

[7]We previously have explained that the "substantial connection" requirement is derived from the legislative history, which states: "Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a *substantial connection* between the property and the underlying criminal activity which the statute seeks to prevent ...." *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 902 n. 14 (quoting Joint Explanatory Statement of Titles II and III of the Psychotropic Substances Act of 1978, Pub.L. No. 95-633, 92 Stat. 3768 (codified in scattered sections of 18 and 21 U .S.C.), *reprinted in* 1978 U.S.C.C.A.N. 9496, 9518, 9522 (emphasis in original)).

[8]Regarding a traceable proceeds case, we have clarified: "When probable cause is based on evidence that the participants are generally engaged in the drug business over a period of time, have no other source of income, and that the properties were bought with the income produced from that drug business, it is not necessary to identify specific drug transactions in the complaint." *United States v. Two Parcels of Real Property,* 92 F.3d 1123, 1127 (11th Cir.1996) (per curiam). The government's complaint for forfeiture follows the pleading requirements in Rule E(2)(a) of the Supplemental Rules of Certain Admiralty and Maritime Claims. *Id.* at 1126. We have recognized that civil forfeiture under § 881(a)(6) is not self-executing because title does not vest in the government until it obtains a judgment of forfeiture. *Sea Servs. of the Keys, Inc. v. Florida,* 156 F.3d 1151, 1153 (11th Cir.1998).

statute." *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 904; *see Daccarett,* 6 F.3d at 57 (recognizing that "the claimant's burden is heavier than the government's .... [because] 'by a preponderance of the evidence' [is] a more stringent standard"). "This burden is met either by rebutting the government's evidence that the property was purchased with proceeds of illegal drug activities or a showing that the claimant is an 'innocent owner' who did not know of the property's connection with drug sales." *15603 85th Ave. N.,* 933 F.2d at 979. To have standing to contest a § 881(a)(6) forfeiture, a claimant must have " 'an ownership or possessory interest in the property seized.' " *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 907 (citation omitted). Consequently, "the critical issue in a forfeiture case" for judicial determination is whether the government's showing of probable cause, if unrebutted by a claimant, "is sufficient to permit forfeiture." *Two Parcels of Real Property,* 92 F.3d at 1126.

In this case, the government demonstrated probable cause that the first property titled in Scottie Carrell's name was purchased with the proceeds of Homer Carrell's marijuana and cocaine sales because he had no other legitimate source of income. Regarding the second property, the government's investigation revealed that the sixteen cars that belonged to Homer Carrell's mother that were exchanged for the property were purchased with Homer Carrell's drug proceeds. Scottie has failed to establish by a preponderance of the evidence that this evidence was not correct. "Evidence that claimants are generally engaged in the drug business over a period of time, have no visible source of substantial income, use cash for large purchases, and are nominee owners is all probative evidence of probable cause, as is a history of drug violations."[9] *Two*

---

[9]In his affidavit, Thomas F. Coram, Jr., Senior Special Agent of the United States Customs Service and previously a Special Agent of the Federal Bureau of Investigation, states that he investigated Homer Carrell's drug activities as the Customs representative to the Northern Alabama Organized Crime Drug Enforcement Task Force, with which he investigated "persons and organized groups involved in drug smuggling, drug trafficking, money laundering, and associated crimes." R1-11-1 ¶ 1. Regarding his investigation of Homer Carrell, which resulted in the government's verified complaint, and his belief that probable cause was established, Coram states:

> [O]n March 31, 1998, I signed a verification of a complaint filed by the Office of the United States Attorney for the Northern District of Alabama in Civil Action Number CV-98-TMP-0907-NE. That complaint describes information developed in the course of a Northern Alabama Organized Crime Drug Enforcement Task Force (OCDETF) investigation of the long-term involvement of Homer Lynell Carrrell in drug trafficking, money laundering, and associated criminal activities in the states of Tennessee, Alabama, and Georgia. The complaint further describes information which I believe establishes probable cause to believe that two (2) described parcels of real property in Jackson County, Alabama, were purchased by said Homer Lynell Carrell with the proceeds of his involvement in drug trafficking but were titled by him in the name of the claimant, Scottie Lynell Carrell, in order to conceal his (Homer Lynell Carrell's) ownership and control of the parcels and/or to conceal the source or nature of the funds used by him to purchase the parcels.

*Parcels of Real Property,* 92 F.3d at 1128 (citations omitted). There is ample evidence of a substantial connection between Homer Carrell's marijuana and cocaine sales and the subject properties to establish probable cause, and Scottie has not shown by a preponderance of the evidence that the two properties were not purchased with Homer Carrell's drug proceeds.

Instead, Scottie has asserted the affirmative defense of innocent ownership. In addition to punishing drug dealers through civil forfeiture, the applicable version of § 881(a)(6) also protects unwitting or innocent owners: "no property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6).[10]

> Congress has already made the hard choices in the area of forfeiture. The statute implicitly differentiates between "wrongdoers" and "innocent owners." All persons and entities connected with the real property subject to forfeiture are wrongdoers except those who are innocent owners. Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities. *As to a wrongdoer, any amount of the invested proceeds traceable to drug activities forfeits the entire property.* We have never held that as to a wrongdoer only the funds traceable to illegal activities may be forfeited. If one is an innocent owner, no amount of that

_____

> *Id.* at 2 ¶ 2. The *in rem* forfeiture complaint, verified by Coram, relates Homer Carrell's drug activities:

>> [A]n extensive investigation by the United States Customs Service (USCS), along with other law enforcement agencies, has found that Homer Lynell Carrrell has been engaged in the large scale distribution of cocaine and marijuana in the Northern District of Alabama since at least 1980; that Carrell's principal source of income during this time period has been the sale and distribution of large quantities of marijuana and cocaine; and that Carrell has engaged in a pattern of conduct designed to conceal his ownership and control of assets obtained with drug proceeds and/or to conceal the true source of the funds used to purchase those assets, all in violation of 18 U.S.C. § 1956.

>> ....

>> [T]he defendant PARCEL 1 represents proceeds traceable to the sale of marijuana and cocaine and, therefore is subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

>> ....

>> [T]he defendant PARCEL 2 represents proceeds traceable to the sale of marijuana and cocaine and, therefore, is subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

> R1-1-1-2 ¶ 4, 3 ¶ 7, 4 ¶ 10.

[10]Congress deleted the innocent owner defense from § 881(a)(4), (6), and (7), which became effective for any forfeiture commenced on or after 120 days from the enactment date, April 25, 2000. Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106-185, § 21, 114 Stat. 202, 225 (2000). Because the government's forfeiture in this case predated the effective date for elimination of the innocent owner defense, we address it.

person's or entity's funds are forfeitable. On the other hand, *if one is a wrongdoer, the full value of the real property is forfeitable because some of the funds invested are traceable as the statute dictates.*

*15603 85th Ave. N.,* 933 F.2d at 981-82 (emphasis added). The claimant, not the government, must prove innocent ownership. *Two Parcels of Real Property,* 92 F.3d at 1129. "Under 21 U.S.C. § 881(a)(6), the government need not prove, and the district court need not find, that the claimant *had* actual knowledge. Rather, it is the claimant's responsibility to prove the *absence* of actual knowledge." *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 907.

The innocent owner defense is based on "actual knowledge, not constructive knowledge," *id.* at 906, "at the time of the transfer and not at the time of the illegal activity,"[11] *United States v. 6640 SW 48th St., Miami, Dade County, Fla.,* 41 F.3d 1448, 1452 (11th Cir.1995).[12] "Allowing post-illegal act transferees who knowingly take an interest in forfeitable property an innocent owner defense because they were not on the scene early enough to consent to the illegal activity would not serve th[e congressional] purpose and would be an absurd construction of the statute.... [I]f a post-illegal act transferee knows of illegal activity which would subject property to forfeiture at the time he takes his interest, he cannot assert the innocent owner

---

[11]Under the Supreme Court's interpretation of the relation back doctrine in *Buena Vista,* "title vests on the date of forfeiture but relates back to the date of the illegal activity." *United States v. 6640 SW 48th St., Miami, Dade County, Fla.,* 41 F.3d 1448, 1451 n. 6 (11th Cir.1995). Although *6640 SW 48th St.* concerns 21 U.S.C. § 881(a)(7), which involves actual use of the property to facilitate a drug crime, rather than § 881(a)(6), we have recognized that "section 881(a)(6) parallels section 881(a)(7), providing for forfeiture of 'moneys' and other valuable properties and containing an identically worded innocent ownership exception." *United States v. 1012 Germantown Road, Palm Beach County, Fla.,* 963 F.2d 1496, 1505 (11th Cir.1992); *15603 85th Ave. N.,* 933 F.2d at 980 n. 3 Thus, we conclude that our innocent owner holdings under our precedent in *6640 SW 48th St.,* which derives from *Buena Vista,* are applicable to our analysis of § 881(a)(6) in this case, which presents the same legislative intent and policy concerns as our innocent owner discussion in *6640 SW 48th St.* In a forfeiture case involving property purchased with drug proceeds filed by the government under §§ 881(a)(6) and (a)(7), we recognized regarding the innocent owner defense that "[t]here is nothing in the legislative history of the statute that requires a standard of 'should have known.' " *United States v. 6960 Miraflores Ave.,* 995 F.2d 1558, 1564 (11th Cir.1993).

[12]In forfeiture cases involving facilitation or commingled traceable proceeds with a claimant's legitimate funds, we have held "that when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture." *15603 85th Ave. N.,* 933 F.2d at 982. We also have applied the "all that reasonably could be expected" language of *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974), for such § 881(a)(6) proceedings: "a claimant who has actual knowledge of the commingling of legitimate and drug funds may be spared forfeiture as an innocent owner if the claimant can prove that everything reasonably possible was done to withdraw the commingled funds or to dispose of the property." *15603 85th Ave. N.,* 933 F.2d at 982. This case is even stronger than a case involving commingled funds because there is no allegation that Scottie or his mother contributed to the purchase of the subject properties.

defense to forfeiture." *6640 SW 48th St.,* 41 F.3d at 1452, 1453. From the perspectives of legislative intent as well as policy, we concluded that "[c]lassifying post-illegal act transferees as innocent owners because they had no opportunity to consent creates a sweeping grant of immunity from forfeiture and a gaping loophole in an intentionally comprehensive forfeiture policy." *Id.* at 1453.

As part of his claim to innocent ownership, Scottie has asserted that he has had duly recorded legal title to the properties that was public record in Jackson County since 1990, when he had joint ownership with his mother, and in his name solely since 1995. Nevertheless, we have recognized that "legal title to property in an entity [or person(s) ] other than the drug trafficker does not of itself insulate that property from the reach of Section 881(a)(6)." *900 Rio Vista Blvd.,* 803 F.2d at 630.

> "The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking .... In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.
>
> * * *
>
> In short, courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else."

*Id.* (alteration in original) (quoting *United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294-95 (S.D.Fla.1985)); *see United States v. One 1982 Porsche 928,* 732 F.Supp. 447, 451 (S.D.N.Y.1990) ("It has been recognized that people engaged in illegal activities, especially when needing to conceal illegitimate funds and being aware of forfeiture statutes, often attempt to disguise their interest in property by not placing title in their own names."). "As a matter of fact, forfeitable proceeds are much more likely to be possessed by drug dealers themselves than by transferees sufficiently remote to qualify as innocent owners; as a matter of law, it is quite clear that neither an 'associate' in the criminal enterprise nor a temporary custodian of drug proceeds would qualify as an innocent owner; indeed, *neither would a sham bona fide purchaser.*" *92 Buena Vista Ave.,* 507 U.S. at 125 n. 20, 113 S.Ct. at 1135 n. 20 (emphasis added).

The evidence in this record reveals that Scottie's innocent owner defense, as to lack of knowledge that the subject properties were purchased with Homer Carrell's drug proceeds, is unavailing. Scottie knew that neither he nor his mother contributed to the purchase of these two properties. He knew that his father had no legitimate source of income and that he had been imprisoned for drug convictions. Scottie also knew that Homer Carrell lost a 147-acre farm titled in his name to forfeiture in 1993 because of drug transactions that he conducted on that property. Not only was this forfeiture proceeding a matter of public record, but also

Elsie Keith attempted to join as a party to the action on her claim of child support from Homer Carrell. That forfeiture proceeding involved the same issues as this case. In 1990, Scottie knew that his mother and he were joint owners of the two subject properties when the deeds were delivered to them and recorded, and he knew when both deeds were transferred into his name and recorded in 1995. Scottie also knew that his father was a fugitive from justice from 1992 until 1998 after Homer Carrell was indicted for intimidating a witness who was providing information to a federal grand jury concerning more of his drug trafficking activities. Thus, Scottie has failed to establish that he did not know that the two subject properties were purchased by his father with drug proceeds in 1990, when the properties were recorded in the names of Scottie and his mother. Similarly, his legal title argument fails because Scottie has not shown that his mother and he were other than straw owners for Homer Carrell. *See 900 Rio Vista Blvd.,* 803 F.2d at 629-30.

With this background showing that these properties are amenable to civil *in rem* forfeiture because they were purchased with proceeds traceable to Homer Carrell's drug transactions, our decision as to whether the statute of limitations had expired is sharply focused. In a traceable proceeds case, the five-year limitations period under § 1621 does not begin to run until the government "discovers" that defendant properties were purchased with or involve proceeds connected to criminal drug activity, and concealment periods toll the running of the limitations time. *See* 19 U.S.C. § 1621. This "link" was not discovered by the government until its investigation in April, 1996, which disclosed that Homer Carrell purchased the two real properties, although he had no apparent source of legitimate income, and that he affirmatively concealed the true ownership by using his family members as straw owners.[13] Homer Carrell's drug crimes or Scottie and his

---

[13]At the hearing on Scottie's motion to dismiss, the following responses by the Assistant United States Attorney ("AUSA") to the magistrate judge clarify the information that the government "discovered" in April, 1996:

> [AUSA]: ... But the five-year statute of limitations applies from the time the government first learns of the offense. The offense would be when it first learned that the property was purchased with drug money, and that's what would make the property subject to forfeiture.

> That was learned by the government during interviews in early April of '96, and the government then filed its forfeiture action that same month, once the government learned that those two properties were subject to forfeiture.

> [THE COURT]: You are not telling me, though, that, when you interviewed Mr. Robinson [owner of the second property] and Mr. Green [owner of the first property], or whoever you interviewed, in '95 or '96—

> [AUSA]: In April of '96.

THE COURT:—they told you, oh, this property was bought from us with drug proceeds money.

[AUSA]:  Yes, I think that's what I am telling the Court.

THE COURT:  That Mr. Green and Mr. Robinson sat there and said, yeah, I was paid with drug proceeds money?

[AUSA]:  They were—Agent Gorham interviewed them, and they were told—*Agent Gorham was told by those two individuals that, in fact, Mr. Carrell, Homer Lynell Carrell, had purchased those properties from them and had basically arranged it so that the properties were placed in nominees.*  As this Court is well aware, *that's why drug dealers use nominees, to hide property.*

THE COURT:  But Mr. Robinson or Mr. Green, or whoever the sellers were, didn't forthrightly admit to you, I don't think, or, you know, maybe they did, and you can tell me that they forthrightly admitted to you that they knew that the money that was being paid was drug proceeds money.

AUSA:  No, sir, I would not say that.

THE COURT:  All right.

[AUSA]:  Their information that they provided in their interviews was that, in fact, Homer Lynell Carrell had bought those two properties from them.

THE COURT:  Right.

[AUSA]:  Of course, as [defense counsel] pointed out to the Court, the government certainly has been well aware of Mr. Carrell's drug activities, drug trafficking activities and other illegal activities since back to at least 1988.

THE COURT:  I guess the government is rightly suspicious that the money used to buy this property was, in fact, drug proceeds money based on your knowledge of his criminal activity.

[AUSA]:  Exactly, Your Honor.  And the government did not learn of these two pieces—did not learn of the existence of these two pieces of property as they were connected to Homer Lynell Carrell until 1996.

*The fact that deeds are on record showing on paper that his son or his ex-wife owns the property does not make them subject to forfeiture.  The fact that he owned them in and of itself wouldn't make it subject to forfeiture unless there is a connection between the property and the illegal activity,* and that's what the government—

THE COURT:  That takes me back to the question I asked you.  What was it about the interviews in April of '96 that created in your mind the suspicion that drug proceeds were used to buy this property, other than your pre-existing knowledge of Mr. Carrell's activity?  That's why I asked you that.

There was nothing that Mr. Green or Mr. Robinson said to you that pointed out that these properties were bought with drug proceeds.  I mean, you p[u]t that connection together based on your prior knowledge of what Mr. Carrell was up to.

[AUSA]:  Yes, sir.  Your Honor, *the two individuals that Agent Gorham interviewed informed him that Mr. Carrell, the senior Mr. Carrell, asked them to put the*

mother's record ownership of the two properties separately did not yield the probable cause that the government needed to link the properties to those drug crimes for civil forfeiture until the government discovered the connection in April, 1996. The civil forfeiture complaint against the defendant properties was filed on April 16, 1998, well within the five-year limitations period.

Although the properties became forfeitable when Homer Carrell used drug proceeds for their respective purchases, § 1621 tolls the running of the limitations period during concealment of this connection. 19 U.S.C. § 1621(2). Homer Carrell went to great lengths to conceal his purchase of the two defendant properties. He told Robinson, owner of the first property, not to record the deed in 1985 because Homer was going to be serving a prison sentence for his drug trafficking. Five years later, Homer had that property and the second property titled in the names of his ex-wife and son. In 1995, title to both properties was transferred on the county title records to Scottie.[14] Although real property cannot be hidden, Homer Carrell concealed his purchases of these properties with his drug proceeds by placing title in the names of his ex-wife and son. Because neither of them had criminal records, there would be no reason to associate their ownership of properties with drug proceeds by searching the county title records, and Homer Carrell was a fugitive for

> *property in nominee names for the purpose of hiding title, because, in one instance, he was about to go off to jail, I believe, and that's why he wanted to hide the property.*
>
> *So the totality of the circumstances, given Mr. Carrell's prior drug trafficking activity, his other properties that were purchased with the proceeds of illegal drug activity—*
>
> THE COURT: Let me ask it this way. *If the government were to discover tomorrow another piece of property out there and a recorded deed in Homer Lynell Carrell's name, and that's all you had, you discovered another piece of property out there that was in his name, I suspect that you would rightly suspect at that point that that was also drug proceeds, just based on the history of Homer Lynell Carrell?*
>
> [AUSA]: *I would have a suspicion,* Your Honor, *but that suspicion alone would not be—would not rise to the level of probable cause that would be necessary to file a forfeiture action against it.*
>
> *The government's position, Your Honor, is that this action was brought well within the five-year statute of limitations because the five-year clock didn't start running until April of '96 when the government first learned of Homer Lynell Carrell's involvement with the purchase of those two defendant parcels of property.*

R2-30-34 (emphasis added).

[14]Each of these title transfers of real property constituted a "financial transaction" under § 1956(c)(4), and the 1995 transactions clearly fall within the five-year statute of limitations for civil forfeiture under § 981(a)(1)(A).

six years.[15]  This scheme succeeded in concealing Homer Carrell's drug-related proceeds from discovery by the government until its investigation in April, 1996, which is the effective date for the commencement of the five-year limitations period.

"Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *E.I. Du Pont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924).  Under the plain language of § 1621, the legislative intent in a traceable proceeds case is to give the government five years after it *discovers* that property is tainted by its purchase with drug proceeds to commence a civil *in rem* forfeiture action against the property.  This legislative intent is furthered by tolling the limitations period during any time of concealment, which enables the government to file a civil forfeiture action when it learns or discovers the involvement or purchase of the property with drug proceeds.[16]  In this case, Homer Carrell set up a straw ownership in his ex-wife and their son by placing title to the defendant properties that he had purchased with drug proceeds in their names.  This scheme concealed and disguised his true ownership of the properties and the fact that they had been purchased entirely with his drug proceeds.  If the § 1621 limitations period were not tolled until the government discovers the drug-tainted nature of the property, then a convicted drug trafficker, like Homer Carrell, would be rewarded by succeeding in his efforts to conceal the fruits of his criminal drug activities because the government would be precluded from a civil *in rem* forfeiture proceeding.  Such an interpretation would dishonor congressional intent.

---

[15]In Homer Carrell's first *in rem* forfeiture in 1993, the loss of his 147-acre farm, title in his name made the civil forfeiture in that facilitation case made it easy for the government to obtain forfeiture, and his ex-wife was not allowed to join as a party, despite her claim of delinquent child support, because she lacked standing as a owner.  By using his drug proceeds to purchase the subject properties but titling them in the names of his ex-wife and son, Homer was able to hide the fact that he was the actual owner of the properties and that his ex-wife and son were nominees.

[16]Contrariwise, using the government's knowledge of the underlying drug crime as the beginning date for the limitations period of § 1621 would mean that, in many cases, the five-year limitations period would expire before the government's civil forfeiture rights accrued.  Examples of possible misuse of § 1621 under such an interpretation include:  an individual using ten-year-old, unconcealed drug proceeds to purchase real property, but the government would be barred from filing a forfeiture action against the property if it had discovered the drug activity generating the proceeds five or ten years earlier, such as when the purchaser was prosecuted and convicted but retained the drug proceeds;  no prosecution occurred against the purchaser because vital evidence was suppressed;  or the purchaser was not personally involved in the criminal activity but received what he or she knew at the time to be drug proceeds by gift or inheritance.  In these examples, the limitations period would have expired before the government's forfeiture against the property materialized if "the alleged offense" of § 1621 were interpreted to be the underlying drug crime rather than the date that the government discovered the connection of drug proceeds with or their use to purchase property.

We hold that the government's discovery of "the alleged offense" in § 1621 in a traceable proceeds case means its knowledge of the connection or link of drug proceeds to the subject property, which commences the running of the five-year limitations period.[17] Applying this interpretation, we conclude that the limitations period commenced in April, 1996, when the government discovered that the subject properties, titled in the names of Homer Carrrell's ex-wife and son, actually were purchased with proceeds from his marijuana and cocaine sales. The district judge erroneously used a "should have known" standard based on title recordation and must reinstate the government's civil *in rem* forfeiture proceeding on remand.[18]

## III. CONCLUSION

The government has appealed the dismissal with prejudice of its civil *in rem* forfeiture action premised on the expiration of the § 1621 five-year limitations period. As we have explained, the limitations period did not commence until April, 1996, when the government discovered that the subject properties were purchased with proceeds from Homer Carrell's drug transactions. Therefore, the government's civil *in rem* forfeiture action filed in April, 1998, was well within the limitations period. Accordingly, we REVERSE the district judge's dismissal of this forfeiture proceeding with prejudice and REMAND for further proceedings consistent with this opinion.

---

[17] *But see United States v. Twenty-Seven Parcels of Real Property,* 236 F.3d 438, 440 (8th Cir.2001) (holding that the limitations period under § 1621 begins to run upon the government's discovery of the underlying criminal offense); *United States v. 874 Gartel Drive, Walnut, Cal.,* 79 F.3d 918, 922 (9th Cir.1996) (per curiam) (same).

[18] Both the magistrate judge and the district judge adopted the "should have known standard" from *Santana v. United States Customs Serv.,* 972 F.Supp. 304, 306 (M..D. Pa.1997), which is not binding authority in our circuit. *See* R1-17-6; R1-19-3.